Gloria Jean REISS, Petitioner,

v.

Edwin F. REISS, Respondent.

No. 01–0251.

Supreme Court of Texas.

Argued April 24, 2002.

Decided June 26, 2003.

Rehearing Denied Nov. 21, 2003.

Shawn Casey and Rita Miller Fason, Houston, for Petitioner.

Richard N. Countiss, Countiss Law Firm, Robert C. Kuehm, Houston, for Respondent.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice HECHT, Justice OWEN, and Justice SMITH joined.

In this case, we must interpret a 1980 divorce decree that divided retirement benefits stemming from one spouse's employment both during and after the marriage. The trial court held that the decree entitled the non-employee spouse to a specific percentage of the total amount of the benefits as of the employee spouse's retirement. The court of appeals reversed, concluding that the decree awarded the non-employee spouse an interest in only the community portion of the benefits at the date of divorce, to be valued at the date of receipt. 40 S.W.3d 605, 613. In accordance with our decision announced today in *Shanks v. Treadway*, 110 S.W.3d 444 (Tex.2003), we reverse the judgment of the court of appeals and render judgment that the non-employee spouse is entitled to a percentage of the total amount of the retirement benefits.

**I**

Edwin and Gloria Reiss married in 1956. In 1957, Edwin started working for Good-

year Tire & Rubber Company, and he participated in the company's retirement plan until his retirement from Goodyear in 1998.[1]

The couple divorced in 1980. The trial court entered a final divorce decree that awarded Gloria fifty percent of Edwin's retirement benefits, and neither party appealed the judgment. The decree provides in pertinent part:

> The Court finds that the parties own community property which should be divided in an equitable manner. It is therefore ORDERED that the community property owned by the parties shall be divided as follows:
>
> . . . .
>
> The Court further finds that the parties own as community . . . a Pension Plan at Goodyear Tire & Rubber Company, where [Edwin] is employed at its Houston, Texas, plant, which Pension Plan the parties have a vested interest in.
>
> . . . .
>
> It is further ORDERED, ADJUDGED AND DECREED that if and when Respondent, Edwin F. Reiss, retires and/or receives a pension from Goodyear Tire & Rubber Company, or for any other reason becomes entitled to receive retirement or pension benefits from Goodyear Tire & Rubber Company, then, and in such event, [Gloria] shall receive fifty percent (50%) of such retirement or pension benefit to which Edwin F. Reiss is entitled to receive from Goodyear Tire & Rubber Company.

After Edwin retired in 1998, Gloria sought to enforce the decree's division of pension benefits by moving for a Qualified

---

1. The *Shanks* opinion provides some background information on the two most common types of retirement plans, defined benefits and defined contribution plans. *Shanks*, 110 S.W.3d at 445. Edwin participated in a defined benefits plan.

Domestic Relations Order ("QDRO"), *see* TEX. FAM.CODE § 9.102, that would entitle her to fifty percent of the total benefits earned under the pension plan, including any sums accrued after the divorce. The trial court granted the motion and entered a QDRO awarding Gloria half of all pension benefits. Edwin appealed, arguing that the court's QDRO divested him of separate property.

The court of appeals reversed the trial court's judgment, stating that "[t]he only property the divorce decree purported to divide was community property." 40 S.W.3d at 608. Accordingly, the appellate court remanded the case to the trial court to enter a QDRO calculating Gloria's fifty percent interest in only the community property portion of Edwin's retirement benefits, "i.e., that portion corresponding to the time the marriage and his retirement plan participation overlapped," but valuing those benefits as of the date of receipt. *Id.* at 607, 613. Gloria now appeals that judgment, asserting that the divorce decree unambiguously awarded her a fixed percentage of her ex-husband's total retirement and that, because Edwin did not appeal the original decree, *res judicata* bars his collateral attack of the judgment. We agree with the trial court's interpretation of the decree and therefore reverse the court of appeals' judgment.

## II

■ For the sake of brevity, we refer to our discussion in *Shanks* of the complexities involved in dividing retirement benefits, the state of the law at the time the decree was entered, and the changes made soon after. *See Shanks*, 110 S.W.3d at 446. We reiterate that we interpret a divorce decree like any other judgment, reading the decree as a whole and "effectuat[ing] the order in light of the literal language used" if that language is unambiguous. *Wilde v. Murchie*, 949 S.W.2d 331, 332 (Tex.1997).

■ The portion of the Reisses' decree that divided the retirement benefits contains language very similar to the decree in *Shanks*, and unlike the dissent, we see no valid reason to interpret the decrees differently.[2] As in *Shanks*, the court that entered the Reisses' decree failed to apportion the community interest by using the formula set out in *Taggart v. Taggart*, 552 S.W.2d 422, 424 (Tex.1977), the prevailing law regarding division of retirement benefits upon divorce at the time the decree was entered.[3] Instead, the court awarded Gloria half of the total benefits, in effect mistakenly classifying all of the benefits Edwin was entitled to receive under the plan as community property and dividing them as such.

■ The court of appeals focused heavily on the fact that *Taggart* and *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976), were controlling when the trial court entered the decree. 40 S.W.3d at 608–09. The court "presume[d] the trial court knew of *Cearley* and *Taggart* and constructed his decree accordingly." *Id.* at 609. But when the language of the decree is unam-

---

**2.** The *Shanks* decree awarded the non-employee spouse "a 'pro-rata interest' . . . of any and all sums received or paid to" the employee spouse from the pension plan. *Shanks*, 110 S.W.3d at 444. The decree defined "pro-rata interest" as "25% of the total sum or sums paid or to be paid to [the employee spouse] from such pension or retirement plan." *Id.*

**3.** In the *Shanks* opinion, we discuss in detail the *Taggart* formula and the changes the Court made to the formula in 1983 when we decided *Berry v. Berry*, 647 S.W.2d 945 (Tex. 1983). *Shanks*, 110 S.W.3d at 446.

biguous, as it is here, we interpret the judgment literally. *Wilde*, 949 S.W.2d at 332. Only when a judgment is subject to more than one reasonable interpretation do we adopt the construction that correctly applies the law. *MacGregor v. Rich*, 941 S.W.2d 74, 75 (Tex.1997) (per curiam). And though the effect of the decree is to divest Edwin of his separate property,[4] that does not alter the decree's plain language.

The dissent interprets the decree in this case differently than we did in *Shanks* because this decree divides the retirement benefits in a section dedicated to apportioning community property and states that the Reisses own the pension plan as community property. Both the dissent and the court of appeals therefore interpret the decree to divide only the community portion of Edwin's retirement benefits. 118 S.W.3d at 444 (Jefferson, J., dissenting); 40 S.W.3d at 608. That analysis, however, ignores the decree's plain language. The decree specifically recites that Gloria "shall receive fifty percent (50%) of such retirement or pension benefit to which Edwin ... is entitled to receive" if and when he retires or is otherwise entitled to the benefits. This language unequivocally awards Gloria half of Edwin's total retirement benefits under the plan, regardless of when they accrued.

Our interpretation does not, as the dissent contends, ignore relevant language in the decree or give "effect to one isolated sentence...." 118 S.W.3d at 444–45 (Jefferson, J., dissenting). We recognize that the decree prefaced the substantive division by classifying the benefits as community property, but that certainly does not mean that all of the property characterized as community was done so correctly. It is clear that the trial court did not intend in a broad sense to divest Edwin of separate property. But as we discussed in *Shanks*, the complicated state of the law in this area and the "difficulty inherent in dividing pension plans that involve both separate and community property" indicate that interpreting such a division is not as simple as determining whether the trial court intended to divide only community property. *Shanks*, 110 S.W.3d at 448. And though a trial court's incorrect characterization of property upon divorce that affects the "just and right" division of the community estate is grounds for reversal on appeal, *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex.1985), Edwin did not appeal the judgment in this case.

Again, we see no valid reason to interpret the Reisses' decree differently than the very similar decree in *Shanks*. 110 S.W.3d at 448. The district court correctly construed the divorce decree to award Gloria fifty percent of Edwin's total retirement benefits. The QDRO therefore serves its intended purpose of implementing the division of benefits set out in the original decree and does not impermissibly "amend, modify, alter, or change the division of property made or approved in the decree of divorce." TEX. FAM.CODE § 9.007(a). Because the QDRO entered in this case is consistent with the unappealed divorce decree's unambiguous property division, the court of appeals erred in reversing the district court's judgment.

### III

Finally, Edwin contends that the divorce decree is a void judgment because the trial court that entered it did not have jurisdic-

---

4. As we noted in *Shanks*, even if the court had correctly applied *Taggart*, it would still have divested Edwin of some separate property. *Shanks*, 110 S.W.3d at 447. In *Berry*, the Court attempted to remedy the concerns about the *Taggart* formula. *Id.* at 446 n. 3; *Berry*, 647 S.W.2d at 947.

tion to divest him of his separate property. Therefore, Edwin argues, the decree is subject to attack at any time. We disagree.

 "Jurisdiction" refers to a court's authority to adjudicate a case. *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 75 (Tex.2000). In general, as long as the court entering a judgment has jurisdiction of the parties and the subject matter and does not act outside its capacity as a court, the judgment is not void. *Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990) (per curiam) (citing *Cook v. Cameron,* 733 S.W.2d 137, 140 (Tex.1987)). Errors other than lack of jurisdiction, such as "a court's action contrary to a statute or statutory equivalent," merely render the judgment voidable so that it may be "corrected through the ordinary appellate process or other proper proceedings." *Id.* (citing *El Paso Pipe & Supply Co. v. Mountain States Leasing, Inc.,* 617 S.W.2d 189 (Tex. 1981) and *Middleton v. Murff,* 689 S.W.2d 212, 213 (Tex.1985)).

The trial court in this case incorrectly characterized all of the benefits accrued under the pension plan as community property in the Reisses' divorce decree, and the judgment was voidable if properly appealed. *Mapco, Inc.,* 795 S.W.2d at 703. But the judgment is not void because a court has jurisdiction to characterize community property-even if it does so incorrectly. *See Hesser v. Hesser,* 842 S.W.2d 759, 764 (Tex.App.-Houston [1st Dist.] 1992, writ denied).[5] Absent an appeal, the judgment became final, and Edwin may not now collaterally attack the court's division of property in the decree. *Cook,* 733 S.W.2d at 140; *Baxter v. Ruddle,* 794 S.W.2d 761, 762 (Tex.1990).

## IV

The divorce decree is unambiguous, and the trial court correctly interpreted the decree. Because the court of appeals erroneously reversed the trial court's judgment, we reverse the judgment of the court of appeals and render judgment that Gloria Reiss is entitled to fifty percent of Edwin Reiss's total retirement benefits.

Justice JEFFERSON filed a dissenting opinion, in which Justice ENOCH and Justice WAINWRIGHT joined.

Justice SCHNEIDER did not participate in the decision.

Justice JEFFERSON, joined by Justice ENOCH and Justice WAINWRIGHT, dissenting.

The Court erroneously concludes that the decree in this case is analogous to the decree in *Shanks v. Treadway,* 110 S.W.3d 444 (Tex.2003), and therefore, the result here should be the same as in *Shanks.* But the Court's holding fails to give due weight to material distinctions between the two decrees. I would hold that the Reisses' decree awards Gloria fifty percent of the community portion of Edwin's retirement benefits. Because the Court concludes otherwise, I respectfully dissent.

It is well-established that, when construing a divorce decree, we read the decree as a whole. *Constance v. Constance,* 544 S.W.2d 659, 660 (Tex.1977); *Lone Star Cement Corp. v. Fair,* 467 S.W.2d 402, 404–05 (Tex.1971). If a decree is unambiguous, we do not consider extrinsic matters to give the decree a meaning different from that of its literal language. *Wilde v.*

---

**5.** If we were to accept Edwin's argument, even pre-*Berry* divorce decrees that correctly applied the controlling *Taggart* formula in dividing retirement benefits would be void and

could be set aside at any time. *See supra* note 4; *Berry,* 647 S.W.2d at 947 (altering the *Taggart* formula to avoid invading a spouse's separate property).

*Murchie,* 949 S.W.2d 331, 332 (Tex.1997); *see also Harrison v. Manvel Oil Co.,* 142 Tex. 669, 180 S.W.2d 909, 914–15 (1944). That does not mean, however, that we are free to interpret decrees based only on the literal meaning of a few isolated words, phrases, or sentences. *See Wilde,* 949 S.W.2d at 332; *see also Point Lookout W., Inc. v. Whorton,* 742 S.W.2d 277, 278 (Tex. 1987) (citing *Lone Star Cement Corp.,* 467 S.W.2d at 405).

Here, the Court focuses on only one sentence of the decree, which states that Gloria is to receive "fifty percent (50%) of such retirement or pension benefit to which Edwin F. Reiss is entitled to receive from Goodyear Tire & Rubber Company." Because similar language appears in the decree in *Shanks,* the Court concludes that there is "no valid reason to interpret the Reisses' decree differently than the very similar decree in *Shanks.*" 118 S.W.3d 442. But the Court's conclusion dismisses as irrelevant material differences between the decrees.

For example, prior to awarding Gloria fifty percent of Edwin's retirement benefits, the decree provides:

> The Court further finds that the parties own *as community [property]* . . . a Pension Plan at Goodyear Tire & Rubber Company, where [Edwin] is employed at its Houston, Texas, plant, which Pension Plan the parties have a vested interest in.

(Emphasis added.) Thus, the trial court specifically determined on June 12, 1980 that Edwin's "Pension Plan" was community property. The decree also provides that the parties' "community property"

should be divided in an "equitable manner."[1] None of this language, however, appears anywhere in the decree in *Shanks.* In fact, the *Shanks* decree does not characterize the retirement benefits as either separate or community property. Moreover, in *Shanks,* the trial court advised the parties that it intended to award Treadway twenty-five percent of Shanks's total retirement benefits. Such a clarification is absent from the record here. Given these significant differences, I disagree with the Court's conclusion that the decrees are sufficiently similar to construe them alike.

I recognize that the decree provides that Gloria is entitled to receive "fifty percent (50%) of such retirement or pension benefit to which Edwin F. Reiss is entitled to receive from Goodyear Tire & Rubber Company." Nevertheless, when construed in context of the entire decree, it is unreasonable to conclude that the decree awards Gloria an interest in the entirety of Edwin's retirement benefits, including that portion representing his separate property. The decree's structure and plain language, from beginning to end, evidence an intent to divide only the couple's community property. This construction is also consistent with Texas law at the time of the Reisses' divorce. *See Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 142 (Tex.1977) (holding that both Texas's Constitution and Family Code prohibit a court from divesting spouses of separate property) (citing Tex. Const. art. I, § 9; art. XVI, § 15; Tex. Fam.Code §§ 3.63, 5.01). To interpret the decree as the Court does here is inconsistent with prevailing law at the time and gives effect to one isolated sentence over the construction of the de-

---

1. "All marital property is . . . either separate or community. If acquired before marriage by any method, or after marriage by gift, devise or descent, it is separate; otherwise, it is community." *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137, 140 (Tex.1979) (quoting *Hilley v.*

*Hilley,* 161 Tex. 569, 342 S.W.2d 565, 567–68 (1961)). Because the trial court found the pension to be "community property," its division of that property was necessarily referable to those assets that accrued during the time that Gloria and Edwin were married.

cree as a whole and the trial court's clear characterization of the pension as community property.

The Court's holding also permits the trial court to effectuate a substantive change in the original decree's property division. Under the Texas Family Code, the court rendering a divorce decree retains the power to enforce property divisions. TEX. FAM.CODE § 9.002. Upon a finding that the original decree is insufficiently specific to be enforceable by contempt, "the court may render a clarifying order setting forth specific terms to enforce compliance with the original division of property." *Id.* § 9.008(b). A court may not, however, "amend, modify, alter, or change the division of property made or approved in the [original] decree." *Id.* § 9.007(a). Thus, if the original decree is unambiguous, as it is here, the district court is without authority to enter an order altering or modifying the original disposition of property. *Pierce v. Pierce*, 850 S.W.2d 675, 679 (Tex.App.-El Paso 1993, writ denied).

The Reisses' decree unambiguously awarded Gloria a fifty percent interest in the *community* portion of Edwin's retirement benefits. Thus, the district court was without authority to enter a QDRO altering that division. *See* TEX. FAM.CODE § 9.007. Accordingly, the appellate court correctly found that the district court erred by awarding Gloria a fifty percent interest in the entirety of Edwin's retirement benefits.

The Court holds that the Reisses' decree unambiguously awards Gloria an interest in the entirety of Edwin's retirement benefits. To reach this conclusion, it dismisses as irrelevant important differences between the decree in this case and the one in *Shanks*. Moreover, the Court improperly sanctions a substantive change in the decree's property division. I would hold that the decree, when read in its entirety, unambiguously awards Gloria fifty percent in only the community portion of Edwin's retirement benefits. Accordingly, I would affirm the courts of appeals' judgment. Because the Court does otherwise, I respectfully dissent.

