Patsy Jean JOHNSON, Appellant,

v.

Wayne VENTLING, Appellee.

No. 13–01–758–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

April 1, 2004.

Bernard L. Shub Jr., Thomas H. Crofts, Jr., Crofts & Callaway, San Antonio, for appellant.

William A. Dudley, Corpus Christi, for appellee.

Before Justices HINOJOSA, CASTILLO, and CHAVEZ.[1]

## OPINION

Opinion by Justice CASTILLO.

This is a case of a marriage that wasn't. Appellant Patsy Jean Johnson challenges: (1) the jurisdiction of the trial court to

---

1. The assignment of retired Justice Melchor Chavez to this Court by the Supreme Court of Texas pursuant to section 74.003 of the government code expired on August 31, 2003. *See* TEX. GOV'T CODE ANN. § 74.003 (Vernon Supp.2004). Accordingly, Justice Chavez did not participate in this decision.

grant appellee Wayne Ventling's motion to vacate a decree of divorce between the parties; and (2) the trial court's denial of Johnson's motion to enforce contractual alimony terms of the decree. To avert criminal prosecution for collecting, throughout her thirteen-year cohabitation with Ventling, federal widow's benefits that stop if she marries, Johnson now stipulates that Ventling and she were never husband and wife. At the same time, she argues she is entitled to the community property rights of a spouse. Having filed suit in 1995 to dissolve the parties' common-law marriage, Ventling now seeks to avoid his contractual obligations to Johnson. We dismiss for want of jurisdiction.

## I. PROCEDURAL HISTORY

### A. The Divorce Decree

On January 23, 1995, Ventling filed an original petition for divorce. Johnson answered and counterclaimed. The parties agreed to a property division. The trial court signed a "Final Decree of Divorce" on April 13, 1995. Among the recitations in the decree were findings that: (1) the pleadings of the petitioner were "in due form and contain all the allegations, information, and prerequisites required by law"; and (2) the court had jurisdiction over the suit and the parties. The decree recited: "The parties have consented to the terms of this decree and stipulated that the provisions for division of assets and liabilities are contractual." Under the heading "Divorce," the decree recited: "IT IS ORDERED AND DECREED that the relationship between WAYNE VEN-TLING, Petitioner, and PATRICIA M. JOHNSON, Respondent, is dissolved."[2] The decree ordered a division of the estate of the parties and contractual alimony to

be paid to Johnson. Finally, the decree provided: "Without affecting the finality of this Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree." No children were born to or adopted by the couple, so the decree does not contain any child custody or support provisions.

### B. The Statistical Report of Divorce

The record also contains a report of divorce required by The Bureau of Vital Statistics of the Texas Department of Health. The section in the form that requests information about the "husband" recited Ventling's name and age. The section requesting information about the "wife" recited Johnson's name, maiden surname, residence, and age. The form showed "01–01–82" as the date of the parties' "marriage." Finally, it recited that a "divorce" was granted on April 13, 1995 in the 94th District Court of Nueces County, Texas.

### C. The Enforcement Proceedings

In October 1995, Johnson filed a motion to enforce the terms of the parties' agreement. Ventling responded with his own counterclaim for enforcement. No order appears in the record with respect to the 1995 enforcement motion. The parties' briefs indicate they settled the dispute.

In September 1997, Johnson filed a second enforcement motion. Ventling answered with a general denial and a claim for attorney fees. In December 1997, Ventling amended his answer and raised the affirmative defenses of fraud, accident, mistake, collateral estoppel, and judicial estoppel. He sought rescission of the parties' agreement and moved to have the

---

**2.** We note that the only "relationship" alleged in the pleadings was a common-law marriage in Ventling's original petition for divorce.

decree vacated. He argued that Johnson defrauded him into agreeing to the property division and that he received incorrect legal advice about the necessity of obtaining a formal divorce from her. Johnson supplemented her motion to enforce to allege collateral estoppel, judicial estoppel, and res judicata. The trial court denied Johnson's motion without prejudice by written order signed January 9, 1998. It ordered the parties to mediate.

In August 1999, Johnson sought summary judgment "for enforcement of the Decree, a declaratory judgment that the Decree is enforceable as a final judgment and/or as a contract, and [for] a judgment that she is entitled to payment/performance as a matter of law." Ventling amended his answer, again seeking rescission of the decree and asserting that it was interlocutory and "the result of fraud, accident, mistake, and other improper motives" of Johnson. He also non-suited "his cause of action for dissolution of marriage raised by Original Petition for Divorce on January 23, 1995."

On September 9, 1999, the trial court denied Johnson the relief she sought. The trial court found as follows:

> [A]n original petition for divorce was filed by Wayne Ventling on or about January 23, 1995. No counterclaim for divorce was filed by Patricia Johnson, or other pleading giving rise to a cause of action to divide property owned by Wayne Ventling. The court further finds that Patricia has entered a judicial stipulation on the record that the parties were never married, which upon the notice of non-suit filed by Wayne Ventling

rendered any issue raised by the pleadings of the parties moot.

The trial court then approved Ventling's non-suit and dismissed the case. It also denied "[a]ll relief sought by either party."

The litigation did not end there.[3] On October 5, 1999, Johnson asked the court to vacate its dismissal order. On October 7, 1999, the trial court vacated the dismissal, granted Ventling's motion for non-suit, and denied Johnson's motion for summary judgment.

On November 10, 1999, Ventling filed a motion to dismiss for failure to state a cause of action. Johnson responded to Ventling's motion to dismiss on January 6, 2000. She also supplemented her counterclaim for dissolution and division of property, asserting she had not abandoned or superceded her original counterclaim for a property division. Although she admitted that "[t]he parties were not, in fact, married" at the time of the decree, she asserted that the decree dissolved the couple's thirteen-year "domestic partnership." She reasserted her motion to enforce the contractual terms of the decree and sought a declaration of her rights under the decree. She supplemented her claims again in November 2000, raising "res judicata, merger and bar, collateral and equitable estoppel, fraudulent inducement, accord and satisfaction, and release."

### D. The Final Judgment

The trial court heard evidence on the parties' claims in March 2001. It signed a final judgment on July 25, 2001 that found as follows:

---

**3.** The parties join the ranks of contentious family law litigants. *See, e.g., Toles v. Toles,* 113 S.W.3d 899, 915 (Tex.App.-Dallas 2003, pet. denied) (and cited related litigation) (holding that claim for "wrongful deprivation of homestead rights and eviction" was imper-missible collateral attack on 1996 divorce judgment); *see also Young v. Young,* 810 S.W.2d 850, 851 (Tex.App.-Dallas 1991, writ denied) (and cited related litigation) ("Texas family law casebooks will refer to this case as *Old v. Old* before the litigation ends.").

This suit was initiated by Petitioner as a suit for dissolution of marriage by divorce and division of jointly owned property. Respondent answered and counterclaimed for a division of jointly owned property.

The parties entered into an agreement for the division of property. This Court rendered judgment on the agreement as reflected in the Final Decree of Divorce of April 13, 1995. The agreed Final Decree provided for a dissolution of the relationship and a division of the property. Respondent now seeks to enforce the terms of the parties' agreement and the Final Decree, including the recovery of money and attorney fees. Petitioner now seeks to have both the Final Decree and the agreement vacated, to have his non-suit of the divorce suit approved, and to recover attorney fees.

The judgment denied "all relief requested" by Johnson. The court concluded "that the agreed judgment remains interlocutory and, pursuant to the Court's continuing plenary power, the judgment is hereby vacated. Petitioner's non-suit of his divorce action is granted." The court awarded Ventling $15,000 in attorney fees. This appeal ensued.

## II. THE ISSUES ON APPEAL

Johnson contends that by 2001, the trial court's plenary jurisdiction over the 1995 decree had long expired. The judgment signed July 25, 2001, she concludes, is void. Ventling counters that the decree only recited that the "relationship" between the parties was dissolved and did not grant a divorce. Since the decree effected only a property division, not a divorce, he contends it was interlocutory. He asserts, therefore, that principles of finality have no bearing on the alimony provisions in the decree. Rather, he argues, principles of contract law govern enforceability of the agreement. Ventling adds that if the de-

cree was in fact a final order, Johnson's appeal must be dismissed for want of jurisdiction since Johnson did not timely appeal the order denying enforcement of the decree signed on January 9, 1998. If, however, the decree was interlocutory, Ventling concludes, the 2001 judgment is adequately supported by the record.

## III. DISPOSITION

### A. Finality

#### 1. Interlocutory Orders

■ There can be only one final judgment. Tex.R. Civ. P. 301; *Tex. Prop. & Cas. Ins. Guar. Ass'n v. De Los Santos,* 47 S.W.3d 584, 587 (Tex.App.-Corpus Christi 2001, no pet.). A judgment that settles all legal issues and rights between the parties is final and appealable. *Id.* (citing *Hinde v. Hinde,* 701 S.W.2d 637, 639 (Tex.1985) (per curiam)).

#### 2. Collateral Attacks

■ A collateral attack is an attempt to avoid the binding force of a judgment in a separate proceeding brought for some other purpose. *Toles v. Toles,* 113 S.W.3d 899, 914 (Tex.App.-Dallas 2003, pet. denied) (citing *Ramsey v. Ramsey,* 19 S.W.3d 548, 552 (Tex.App.-Austin 2000, no pet.)). A judgment is void only if the court had no jurisdiction over the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court. *Reiss v. Reiss,* 118 S.W.3d 439, 443 (Tex.2003); *Toles,* 113 S.W.3d at 914. All other errors make the judgment merely voidable, and may be corrected only through a direct attack. *Reiss,* 118 S.W.3d at 443; *Toles,* 113 S.W.3d at 914.

■ When reviewing a collateral attack, we presume the validity of the judgment under attack. *Id.* Extrinsic evidence

may not be used to establish a lack of jurisdiction when collaterally attacking a judgment. *Id.* A collateral attack fails if the judgment contains jurisdictional recitals, even if other parts of the record show a lack of jurisdiction. *Id.* "It is well established in Texas that a divorce judgment, unappealed, and regular on its face, is not subject to a collateral attack in a subsequent suit." *Putegnat v. Putegnat,* 706 S.W.2d 702, 703–04 (Tex.App.-Corpus Christi 1986, no writ) (quoting *Hardin v. Hardin,* 597 S.W.2d 347, 350 (Tex.1980)).

### 3. Plenary Jurisdiction

■ A trial court retains plenary power to grant a new trial or to vacate, modify, correct, or reform a judgment within thirty days after the judgment is signed. TEX.R. CIV. P. 329b(d); *First Alief Bank v. White,* 682 S.W.2d 251, 252 (Tex.1984) (orig.proceeding) (per curiam). After the expiration of those thirty days, the trial court has no authority to set aside a judgment except by bill of review for sufficient cause. TEX.R. CIV. P. 329b(f); *Thursby v. Stovall,* 647 S.W.2d 953, 954 (Tex.1983) (orig.proceeding) (per curiam); *In re Parker,* 117 S.W.3d 484, 487 (Tex.App.-Texarkana 2003, orig. proceeding); *In re Garcia,* 94 S.W.3d 832, 834 (Tex.App.-Corpus Christi 2002, orig. proceeding). If no party to a judgment files a motion that extends the trial court's plenary power, the trial court loses plenary power over the judgment thirty days after the judgment is signed. *Bass v. Bass,* 106 S.W.3d 311, 314 (Tex. App.-Houston [1st Dist.] 2003, no pet.).

### 4. Continuing Jurisdiction

■ After expiration of its plenary jurisdiction, a trial court retains its inherent power to clarify or enforce a divorce decree. *See McGehee v. Epley,* 661 S.W.2d 924, 926 (Tex.1983) (per curiam). Thus, a trial court may enter a clarifying order to enforce compliance with an insufficiently specific divorce decree. TEX. FAM.CODE ANN. § 9.008(b) (Vernon 1998). However, the trial court "may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment." TEX. FAM.CODE ANN. § 9.007(a) (Vernon 1998); *Shanks v. Treadway,* 110 S.W.3d 444, 449 (Tex.2003). Any order "that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable." TEX. FAM.CODE ANN. § 9.007(b) (Vernon 1998).

### B. Analysis

#### 1. The 1995 Decree Was a Final Divorce Judgment

■ The decree dissolved the "relationship" between the parties and ordered an agreed division of their property. It is regular on its face. We find that the decree settled all legal issues and rights between the parties. *See De Los Santos,* 47 S.W.3d at 587. We hold that the 1995 "Final Decree of Divorce" was a final divorce judgment and not interlocutory at the time the trial court signed the 2001 judgment. *See In re Parker,* 117 S.W.3d at 487; *see also De Los Santos,* 47 S.W.3d at 587.

#### 2. Impermissible Collateral Attack

We find that the decree contained findings sufficient to establish the jurisdictional basis for a valid judgment. *See Reiss,* 118 S.W.3d at 443; *see also Toles,* 113 S.W.3d at 914. We conclude that the decree is not void and may not be collaterally attacked. *See Reiss,* 118 S.W.3d at 443; *see also Toles,* 113 S.W.3d at 914. We hold that Ventling's challenge to the enforceability of the decree in this proceeding amounted to an impermissible collater-

al attack. *See Reiss,* 118 S.W.3d at 443; *see also Toles,* 113 S.W.3d at 914; *Putegnat,* 706 S.W.2d at 703–04.

### 3. No Plenary Jurisdiction

Neither of the parties appealed the decree or filed any motion that extended the trial court's plenary power. We hold that the trial court lost plenary power over the decree thirty days after signing it. *See Bass,* 106 S.W.3d at 314; *see also In re Garcia,* 94 S.W.3d at 834. Thus, after expiration of its plenary jurisdiction, the trial court retained only its inherent power to clarify or enforce the 1995 decree. *See McGehee,* 661 S.W.2d at 926.

### 4. No Continuing Jurisdiction to Vacate the 1995 Decree

■■■ By vacating the decree, the trial court effectively changed the division of property. We hold that the trial court had no authority to enter an order altering or modifying the original disposition of property. *See Shanks,* 110 S.W.3d at 449.

■■■ Judicial action taken after a trial court's jurisdiction has expired is a nullity. *State ex rel. Latty v. Owens,* 907 S.W.2d 484, 486 (Tex.1995) (per curiam). A party may but need not appeal a void judgment. *Id.* We may declare the judgment void and dismiss for lack of jurisdiction. *Id.* We do so today. We hold that the trial court had no jurisdiction to sign the 2001 judgment vacating the 1995 de-

cree. *See Shanks,* 110 S.W.3d at 449; *see also Putegnat,* 706 S.W.2d at 703–04. We hold that the July 25, 2001 judgment is void. *See De Los Santos,* 47 S.W.3d at 588.

### C. Appellate Jurisdiction

■■■ Our jurisdiction extends no further than that of the court from which the appeal is taken. *Warner–Lambert Co. v. Mills,* 117 S.W.3d 488, 490 (Tex.App.-Beaumont 2003, no pet. h.) (citing *Pearson v. State,* 159 Tex. 66, 315 S.W.2d 935, 938 (1958)); *Nabejas v. Tex. Dep't of Pub. Safety,* 972 S.W.2d 875, 876 (Tex.App.-Corpus Christi 1998, no pet.). Accordingly, we hold that we have no jurisdiction to consider this appeal.[4] *See Nabejas,* 972 S.W.2d at 876.

### IV. CONCLUSION

Both parties in this case have been " 'playing fast and loose' with the courts to suit [their] own purposes." *See Andrews v. Diamond, Rash, Leslie & Smith,* 959 S.W.2d 646, 649 (Tex.App.-El Paso 1997, writ denied).[5] We dismiss this appeal for want of jurisdiction.

---

**4.** Arguably, the trial court did have jurisdiction to deny Johnson's enforcement motion. *See McGehee v. Epley,* 661 S.W.2d 924, 926 (Tex.1983) (per curiam). However, because our decision today may affect resolution of any enforcement proceeding, we do not reach Johnson's second issue challenging the trial court's denial of her enforcement motion. *See State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 453 n. 4 (Tex.1997) ("Because the court of appeals' decision may affect the amount of damages awarded, as well as the award of attorney's fees, we do not reach State Farm's

argument that the court of appeals erred by awarding attorney's fees on the entire amount of damages found by the jury.").

**5.** The El Paso court derived the quote "playing fast and loose" from a federal bankruptcy case. *Andrews v. Diamond, Rash, Leslie & Smith,* 959 S.W.2d 646, 649 (Tex.App.-El Paso 1997, writ denied) (quoting *In re Phillips,* 124 B.R. 712, 720 (W.D.Tex.1991)). Although this phrase appears in numerous federal authorities, it apparently finds its origin in a 1949 decision of the Superior Court of New Jersey.

*Dallas Sales Co. v. Carlisle Silver Co.,* 2003 WL 21877647, * 16 n. 3 (Tex.App.-Waco 2003, no pet.) (citing *Scarano v. Cent. Ry. Co. of N.J.,* 203 F.2d 510, 513 (3d Cir.1953); *Stretch v. Watson,* 6 N.J.Super. 456, 69 A.2d 596, 603 (1949), *rev'd in part on other grounds,* 5 N.J. 268, 74 A.2d 597 (1950) ("A party will not be permitted to play fast and loose with the courts.")).