

## NUMBER 13-09-00563-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

---

PATRICIA M. JOHNSON,                                                    Appellant,

v.

WAYNE VENTLING,                                                        Appellee.

---

### On appeal from the 94th District Court
### of Nueces County, Texas.

---

## MEMORANDUM OPINION

### Before Chief Justice Valdez and Justices Yañez and Garza
### Memorandum Opinion by Justice Garza

Appellant, Patricia M. Johnson, challenges the trial court's denial of her motion to enforce contractual alimony provisions agreed to by appellee, Wayne Ventling.  By two issues, Johnson contends:  (1) that the trial court erred in determining that the contractual alimony provisions were unenforceable; and (2) that she is entitled to a judgment of $142,500, representing the amount of alimony alleged to be due from Ventling, as well as interest and attorney's fees.  We reverse and remand.

### I. BACKGROUND

This case involves a thirteen-year romantic relationship which devolved into a fifteen-year series of legal liaisons.  Johnson and Ventling cohabited from 1982 to 1995.  Following the advice of his attorney that a common-law marriage existed and that a formal

decree regarding property division was in his best interest, Ventling filed for divorce. The parties consented to the terms of the divorce and a "Final Decree of Divorce" was entered on April 13, 1995. The decree stated that "the relationship between [Ventling] and [Johnson] is dissolved" and provided for the disposition of the parties' community property, including a lump sum payment to be made from Ventling to Johnson in the amount of $25,537. The decree, which was signed by the trial court as well as both parties and their attorneys,[1] further stated as follows:

Alimony

It is the mutual desire of the parties to provide a continuing measure of support for [Johnson] after the dissolution of the relationship between the parties. These support payments undertaken by [Ventling] are intended to qualify as contractual alimony as that term is defined in section 71(a) of the Internal Revenue Code of 1986 ("the Code"), as amended, and are intended to be includable in the gross income of [Johnson] under section 71(a) of the Code and deductible by [Ventling] under section 215(a) of the Code. All provisions of this article will be interpreted in a manner consistent with that intention.

Contractual Obligations

This alimony obligation undertaken by [Ventling] is contractual in nature and is not an obligation imposed by order or decree of court.

Terms, Conditions, and Contingencies

Amount. [Ventling] will pay to [Johnson] $2,500.00 per month as and for alimony.

. . . .

Term. The payments will be for eighty-four (84) months with the last payment being March 1, 2002.

. . . .

Default and Acceleration. [Ventling] agrees that time is of the essence in the payment of the periodic alimony payments. If default is made by [Ventling] in the prompt payment of any periodic amounts due under the terms of this agreement and such default continues for a period of more than 60 days, the entire remaining alimony obligation of [Ventling], at the option of [Johnson], shall then be accelerated and shall become immediately due and payable, together with an amount sufficient to reimburse [Johnson] for any tax and/or penalty resulting from such default by [Ventling].

---

[1] The parties' signatures on the final decree appeared at the conclusion of the document underneath the following statement: "APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE."

. . . .

<u>Clarifying Orders</u>

Without affecting the finality of this Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

In October of 1995, Johnson filed a motion for enforcement, contending that Ventling failed to deliver certain community property to her as provided in the decree. In response, Ventling filed a cross-motion for enforcement. The parties settled this dispute. Johnson then filed a second motion for enforcement in September of 1997, alleging that Ventling had (1) failed to make the $25,537 lump sum payment as required by the decree, and (2) failed to make the last three alimony payments. Johnson sought acceleration of the entire alimony amount as provided in the decree. In response to this second enforcement motion, Ventling raised a novel defense, arguing that the parties had in fact never been married. Contending that Johnson had deceived him into believing that they were in a common-law marriage, Ventling asked the trial court to: (1) vacate the 1995 decree; (2) rescind the parties' agreement "on the grounds of mistake, accident, fraud, laches, limitations, and failure of consideration"; and (3) "non-suit" his divorce action. Although more than two years had passed since the trial court's entry of the final decree, Ventling asserted that the trial court retained plenary power to vacate the decree because, assuming the parties were never actually married, the decree merely stated the parties' rights as to their jointly-owned property and was not a final judgment completely disposing of his divorce action. *See Tex. Prop. & Cas. Ins. Guar. Ass'n v. De Los Santos*, 47 S.W.3d 584, 587 (Tex. App.–Corpus Christi 2001, no pet.) ("A judgment which settles all the legal issues and rights between the parties is final and appealable.") (citing *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985) (per curiam)).

Johnson later moved for summary judgment on her enforcement motion. In arguing the motion before the trial court, Johnson's attorney announced that the parties had

3

stipulated that they were, in fact, never married.[2]  Ventling stipulated that he, in fact, had not made the payments as required by the 1995 decree.  The trial court then denied Johnson's motion for summary judgment, granted Ventling's request to "non-suit" the divorce action, and authorized Johnson to amend her pleadings.  Johnson did so, alleging that the parties were involved in a "domestic partnership" for thirteen years and asking the trial court to enforce the community property disposition as provided in the 1995 decree.

Following various continuances and delays, the parties returned to the trial court for a hearing on March 16, 2001.  At that time, Ventling reiterated his position that Johnson had fraudulently induced him into believing that they were married and that, but for this inducement, he would not have agreed to the terms of the 1995 decree.  In an order dated July 25, 2001, the trial court concluded that "the agreed judgment remains interlocutory," vacated the 1995 decree "pursuant to the Court's continuing plenary power," and dismissed the case by approving Ventling's "non-suit" of the divorce action.  The trial court also awarded attorney's fees to Ventling.[3]

Johnson appealed this judgment, and we concluded that the trial court lacked jurisdiction to vacate the 1995 decree.  *Johnson v. Ventling*, 132 S.W.3d 173, 179 (Tex.

---

[2] Johnson testified that she was receiving military widow's benefits from a prior marriage, and that those benefits would terminate if she remarried.

[3] After the July 25, 2001 judgment, the trial court entered the following findings of fact:

Nowhere in the order of April 13, 1995, or any other order, judgment, or decree before or since, did the Trial Court find the parties to be married.  In fact, subsequently, by judicial stipulation and finding by the Trial Court, it was resolved that [the parties] were not and had never been married.  In the absence of a marriage, there was no community property estate, or existence of a spousal relationship . . .

The Trial Court and [Ventling] were of the opinion and conclusion on April 13, 1995, that the purpose of that hearing was granting unto the parties a divorce, and terminating their marital status.  The Court and [Ventling] would not discover until after April 13, 1995, that [Johnson] denied the existence of a marriage relationship . . .

The court further pronounced the following conclusions of law:

A decree or court order which includes a provision for the payment of alimony, even contractual alimony, suffers from a failure of consideration if in fact the parties are not and were never married . . .

A money judgment to equalize, or made incident to effecting a just and right division of community property, is a legal nullity and a legal fiction, when in fact the parties were never married and thus, as a matter of law, there can be no community property estate.  A judgment upon such grounds fails for want of consideration.

4

App.–Corpus Christi 2004, no pet.). Although the parties agreed that they were never married, we nevertheless held that the 1995 decree "was a final divorce judgment and not interlocutory at the time the trial court signed the 2001 judgment." *Id.* at 178. Because the decree was a final judgment, the trial court's plenary jurisdiction to vacate the decree expired thirty days after it was signed. *Id.*; *see* TEX. R. CIV. P. 329b(d). We further concluded that "the decree contained findings sufficient to establish the jurisdictional basis for a valid judgment," and therefore, "the decree is not void and may not be collaterally attacked." *Johnson*, 132 S.W.3d at 178 (citing *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003) ("In general, as long as the court entering a judgment has jurisdiction of the parties and the subject matter and does not act outside its capacity as a court, the judgment is not void."); *Toles v. Toles*, 113 S.W.3d 899, 914 (Tex. App.–Dallas 2003, pet. denied)). Because the trial court had no jurisdiction to sign the 2001 judgment vacating the 1995 decree, we dismissed the appeal for want of jurisdiction. *Id.* at 179.

Johnson then instituted proceedings in Iowa, where Ventling resided, seeking to domesticate the 1995 decree and enforce the alimony provisions in that state. In an order dated January 30, 2007, the Iowa court allowed enforcement of the $25,537 lump sum property division payment but disallowed enforcement of the contractual alimony provisions, noting that the obligations expressed therein did not constitute a "judgment" enforceable in Iowa. Johnson then returned to Texas in an effort to secure such a judgment. Specifically, Johnson sought a judgment for the total amount of Ventling's alimony obligations, accelerated according to the terms of the decree, as well as damages for adverse tax consequences and attorney's fees. In response, Ventling again asserted defenses of fraud, accident, mistake, estoppel, illegality, res judicata, statute of limitations, failure of consideration, and statute of frauds. On June 16, 2009, the trial court rendered judgment in favor of Ventling, denying all relief requested by Johnson.[4] The trial court

---

[4] The June 16, 2009 judgment was at least the third final judgment rendered by the trial court in this case. After a hearing on January 16, 2009, the trial court rendered its original judgment on March 11, 2009 granting Johnson's motion for enforcement and awarding to Johnson: (1) $306,375, representing the outstanding alimony balance and accrued interest; (2) $61,121.20, representing damages for adverse tax

5

subsequently entered the following findings of fact and conclusions of law:

### Findings of Fact

1.  On April 13, 1995, the Trial Court signed a final judgment in the above entitled and numbered cause;

2.  The final judgment included a separate provision that Wayne Ventling pay Patricia M. Johnson spousal alimony in the amount of $2,500.00 per month for a term of 84 months;

3.  On September 26, 1997, Patricia Johnson filed a Motion to Enforce the judgment, alleging a failure by Wayne Ventling to pay money due her in the April 13, 1995 judgment, and a failure to make spousal alimony payments;

4.  An Answer to the enforcement suit was filed by Wayne Ventling, in which affirmative defenses were raised;

5.  No jury was demanded by either party, and all matters of fact and of law were submitted to the Trial Court for resolution.

6.  The alimony provision of the final decree of divorce signed April 13, 2005, as stated in the decree on page 7, was intended to qualify as contractual alimony as that term was defined in section 71(a) of the Internal Revenue Code of 1986.

### Conclusions of Law

7.  Texas Family Code Chapter 9 provides that a party affected by a decree of divorce providing for a division of property "as provided by Chapter 7" may request enforcement of that decree.

8.  Chapter 7 of the Texas Family Code allows a trial court, in a decree of divorce, to order a division of the estate of the parties.

9.  As the [sic] Patricia M. Johnson has openly confessed that the parties were never married, and were never divorced, whatever property or property rights which may have been acquired or accumulated by or between them prior to April 13, 1995, was not community property.

10. On the date this court's final judgment was signed in this case, April 13, 1995, a trial court judgment or court order judicially imposing the payment of spousal alimony was void because alimony, as defined in 26 United States Code 71, requires the existence of a marriage. The provisions within the 1995 Decree pertaining to alimony are therefore

---

consequences and accrued interest; (3) $60,863.46, representing the lump sum property settlement payment and accrued interest; and (4) $76,620.38 in attorney's fees, $9,070.23 in court costs, $7,500 in attorney's fees in the event of an appeal to this court and $5,000 in attorney's fees in the event of an appeal to the Texas Supreme Court. On April 13, 2009, the trial court rendered an amended final judgment (1) omitting the interest on the outstanding alimony, (2) omitting the damages for adverse tax consequences, and (3) awarding a reduced amount of attorney's fees. Finally, after a second hearing on June 9, 2009, the trial court vacated the two previous judgments and rendered its judgment denying Johnson's motion for enforcement in its entirety.

not enforceable.

11. Patricia Johnson's motions to enforce the Decree and her request for judgment on the balance she alleges is due for alimony payments under the Decree must be denied.

12. Patricia Johnson's Declaratory Judgment Action seeking a declaration that she is entitled to alimony under the 1995 Decree must be denied.

13. Patricia Johnson's claims for attorneys fees are denied.

14. Patricia Johnson's claim for post judgment interest is denied.

This appeal followed.[5]

## II. DISCUSSION

On appeal, Johnson argues by two issues that the trial court erred in denying her motion to enforce the contractual alimony provisions of the 1995 decree.[6] By her first issue, Johnson claims that the trial court erred because: (1) our decision in 2004 is the "law of the case" and contradicts the trial court's ruling; (2) Ventling's affirmative defenses to Johnson's enforcement action amounted to an impermissible collateral attack on the 1995 decree; (3) any "irregularity" in the 1995 decree "regarding the parties' pleaded common law marital status would at most make the judgment voidable" and therefore not vulnerable to collateral attack; and (4) the trial court "had a duty to exercise its inherent

---

[5] Ventling moved this Court to dismiss the appeal for want of jurisdiction, contending that Johnson's notice of appeal was untimely. *See* TEX. R. APP. P. 26.1 (stating that a notice of appeal must be filed within 30 days after the judgment is signed, or within 90 days after the judgment is signed if any party timely files a motion to modify the judgment). Johnson filed her notice of appeal on September 14, 2009, which was ninety days after the judgment was signed. According to Johnson, the notice was timely because she had filed a motion to vacate the judgment on July 21, 2009, thereby extending the deadline for filing a notice of appeal. *See id.* Ventling argued that Johnson's motion to vacate was itself untimely and that it therefore did not serve to extend the deadline. *See* TEX. R. CIV. P. 329b(g) (stating that a motion to modify a judgment must be filed within thirty days after the judgment is signed). However, although Johnson's motion to vacate was file stamped by the District Clerk as having been received on July 21, 2009—more than thirty days after the judgment was signed—the motion was actually mailed by Johnson to the trial court manager on July 15, 2009. We denied Ventling's motion to dismiss the appeal because Johnson's motion to vacate, having been mailed to the trial court manager within thirty days following the signing of the judgment, was sufficient under the applicable rules to extend the deadline for filing a notice of appeal. *See* TEX. R. CIV. P. 5 ("If any document is sent to the proper clerk . . . and is deposited in the mail on or before the last day for filing same, the same, if received by the clerk not more than ten days tardily, shall be filed by the clerk and be deemed timely filed."); *Stokes v. Aberdeen Ins. Co.*, 917 S.W.2d 267, 268 (Tex. 1996) ("For purposes of determining whether a party files a document timely (thereby establishing appellate deadlines), we hold that mailing the document to the proper court address is *conditionally effective* as mailing it to the proper court clerk's address." (Emphasis in original)).

[6] Johnson does not challenge the trial court's judgment as it relates to the lump sum property settlement payment or the damages for adverse tax consequences as provided in the 1995 decree.

power to enforce the terms" of the decree. By her second issue, Johnson argues that, because the contractual alimony provisions are in fact enforceable, she is entitled to a judgment of $142,500, representing the payments due from Ventling, as well as interest and attorney's fees.

## 1. Standard of Review

On appeal, a trial court's conclusions of law are reviewed de novo and will be reversed only if they are erroneous as a matter of law.[7] *Villagomez v. Rockwood Specialties, Inc.*, 210 S.W.3d 720, 727, 728 (Tex. App.–Corpus Christi 2006, pet. denied) (citing *Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App.–Austin 1999, pet. denied); *Hofland v. Fireman's Fund Ins. Co.*, 907 S.W.2d 597, 599 (Tex. App.–Corpus Christi 1995, no writ)). We will uphold the trial court's conclusions upon any legal theory supported by the evidence. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Waggoner v. Morrow*, 932 S.W.2d 627, 631 (Tex. App.–Houston [1st Dist.] 1996, no writ).

## 2. Applicable Law

Unlike other forms of spousal maintenance, contractual alimony is not void as being in violation of state public policy. *Birdwell v. Birdwell*, 819 S.W.2d 223, 225-27 (Tex. App.–Fort Worth 1991, pet. denied); *see Francis v. Francis*, 412 S.W.2d 29, 32-33 (Tex. 1967) (holding that permanent alimony contravenes the public policy of the state).[8] Instead, "an assumed obligation for spousal support is properly characterized as a contractual duty having 'whatever legal force the law of contracts will give to it.'" *Woolam*

---

[7] In his brief on appeal, Ventling notes correctly that "[f]indings of fact in a case tried to the court have the same force and dignity as a jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *Valley Diagnostic Clinic, P.A. v. Dougherty*, 287 S.W.3d 151, 155 (Tex. App.–Corpus Christi 2009, no pet.). However, only the trial court's conclusions of law—not its findings of fact—are in dispute here.

[8] The Texas Family Code explicitly allows parties to a divorce proceeding to enter into a written agreement concerning spousal maintenance. *See* TEX. FAM. CODE ANN. § 7.006(a) (Vernon 2006). Under that statute, if the court finds that the terms of such a written agreement are "just and right," those terms then become binding on the court. *Id.* § 7.006(b). The decree at issue here does not explicitly state whether the trial court found the terms of the parties' alimony agreement to be "just and right"; however, the trial court's signature on the decree strongly indicates that it approved of the terms contained therein.

*v. Tussing*, 54 S.W.3d 442, 447 (Tex. App.–Corpus Christi 2001, no pet.) (quoting *Francis*, 412 S.W.2d at 31). When an agreement for the payment of alimony is executed by the parties and incorporated into the judgment of divorce, it is binding on the parties and is interpreted under general contract law. *Schwartz v. Schwartz*, 247 S.W.3d 804, 806 (Tex. App.–Dallas 2008, no pet.) (citing *O'Benar v. O'Benar*, 410 S.W.2d 214, 217 (Tex. Civ. App.–Dallas 1968, writ dism'd); *Vickers v. Vickers*, 553 S.W.2d 768, 769-70 (Tex. Civ. App.–Beaumont 1977, no writ); *Pollard v. Steffens*, 161 Tex. 594, 602, 343 S.W.2d 234, 239 (1961)). Further, a party's signature approving the contents of an agreed divorce decree has been found to be a binding attestation of that party's agreement to contractual support provisions, even in the absence of a separate written support agreement. *See Rousseau v. Rousseau Sprecher*, 843 S.W.2d 300, 301 (Tex. App.–Houston [14th Dist.] 1992, no writ) (requirement that agreement for contractual alimony must be in writing is satisfied if divorce decree specifies terms of agreement and parties sign divorce decree); *Mackey v. Mackey*, 721 S.W.2d 575, 579 (Tex. App.–Corpus Christi 1986, no writ) (rejecting the argument that a party's approval of the form and content of an agreed divorce decree was merely consent to entry of the decree and not execution of the contract). "As with any other contract, absent consent of the parties, the provisions of the agreement will not be modified or set aside except for fraud, accident or mutual mistake of fact." *Schwartz*, 247 S.W.3d 804 (citing *Boyd v. Boyd*, 545 S.W.2d 520, 523 (Tex. Civ. App.–Houston [1st Dist.] 1976, no writ)).

In general, a judgment rendered by consent has the same force as a judgment entered after protracted litigation, except "to the extent that the consent excuses error and operates to end all controversy between the parties." *Birdwell*, 819 S.W.2d at 226 (citing *McCray v. McCray*, 584 S.W.2d 279 (Tex. 1979); *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 892 (1956)). "Thus, in suits to enforce agreed judgments, parties may not raise contractual defenses because such defenses constitute impermissible collateral attacks on the prior judgments." *Id.* at 226-27 (quoting *Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979)); *see Chess v. Chess*, 627 S.W.2d 513, 516 (Tex. App.–Corpus Christi

1982, no writ).

## 3.     Analysis

We agree in part with Johnson's argument that our 2004 opinion is the "law of the case" and contradicts the judgment on appeal.  Under the "law of the case" doctrine, questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages.  *Loram Maint. of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006) (citing *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986)).  By narrowing the issues in successive stages of the litigation, the doctrine is intended to achieve uniformity of decision as well as judicial economy and efficiency.  *Briscoe v. Goodman Corp.*, 102 S.W.3d 714, 716 (Tex. 2003).  As noted, in 2004 we concluded that the 1995 decree was a final divorce judgment, is "not void," and "may not be collaterally attacked." *Johnson*, 132 S.W.3d at 178 (citing *Putegnat v. Putegnat*, 706 S.W.2d 702, 703-04 (Tex. App.–Corpus Christi 1986, no writ) ("It is well established in Texas that a divorce judgment, unappealed, and regular on its face, is not subject to a collateral attack in a subsequent suit.")).  The law of the case doctrine precludes us from reconsidering these issues.  *See id.*  Johnson contends that, because of this, the trial court was compelled to enforce the contractual alimony provisions contained in the 1995 decree.

In response, Ventling sets forth several arguments.  First, he claims that the contractual alimony provisions were "not part of the decree" and "expressly not part of any judgment," citing the language in the decree stating that the alimony obligation "is contractual in nature and is not an obligation imposed by order or decree of court."  We disagree.  It is true that the alimony obligation is contractual in nature; the court did not have the authority to impose alimony obligations without the parties' consent. *See Francis*, 412 S.W.2d at 32-33.  However, the alimony terms were set forth entirely within the order, which was entitled "Final Decree of Divorce" and which was signed by the trial court as well as the parties and their attorneys.  The fact that the decree stated that the alimony obligation is not "imposed by order or decree of court" does not alter the fact that the terms were agreed to by the parties and approved by the trial court, as evidenced by its

10

signature. Because the contractual alimony terms were incorporated into the judgment of divorce, they are binding on the parties. *Schwartz*, 247 S.W.3d at 806 (citing *O'Benar*, 410 S.W.2d at 217; *Vickers*, 553 S.W.2d at 769-70; *Pollard*, 161 Tex. at 602, 343 S.W.2d at 239).

Ventling asserts further that "the non-existence of a marriage prevents a party from filing a motion to enforce [contractual alimony] because there is no division of a marital estate to enforce." However, Ventling does not direct us to any authority supporting this point other than the trial court's 2001 conclusion of law—which itself did not cite any supporting case law or statute—stating that "[a] decree or court order which includes a provision for the payment of alimony, even contractual alimony, suffers from a failure of consideration if in fact the parties are not and never were married." Even if we were to adopt this proposition of law—for which we find no persuasive authority—our 2004 opinion compels the conclusion that contractual defenses, such as failure of consideration, are now unavailable to Ventling because the instant proceeding is a collateral attack on the 1995 decree. *See Johnson*, 132 S.W.3d at 178-79 ("We hold that Ventling's challenge to the enforceability of the decree in this proceeding amounted to an impermissible collateral attack."); *Birdwell*, 819 S.W.2d at 226-27 ("[I]n suits to enforce agreed judgments, parties may not raise contractual defenses because such defenses constitute impermissible collateral attacks on the prior judgments."). We note also that the now-stipulated lack of a "marital estate" has no bearing on the issue of contractual alimony, which, if awarded, is not part of the "just and right" division of the marital estate in a divorce proceeding.

Moreover, the fact that both parties now claim that they were never married is immaterial. Ventling's original petition for divorce asserted that the parties "have a common law marriage" and the final decree dissolved that purported marriage under terms consented to by both parties with advice of counsel. Both parties signed the final decree, acknowledging that they "approved and consented to" the terms "as to both form and substance." Neither party appealed the decree, which was a final divorce judgment. *Johnson*, 132 S.W.3d at 178, 179. Regardless of whether the parties now deny that they

11

were ever married, the 1995 decree clearly implied that they were and that a common-law marriage was the "relationship" between them that was being terminated.[9]

Just as the trial court in 2001 lacked the plenary power to vacate the 1995 decree, the trial court in 2009 was without the authority to refuse to enforce the decree's alimony provisions based on Ventling's contractual defenses. However, as noted, a final judgment may be attacked in a collateral proceeding if it is shown that the consent given to the judgment was the result of extrinsic fraud,[10] accident, or mutual mistake of fact. *See Schwartz*, 247 S.W.3d at 804 (citing *Boyd*, 545 S.W.2d at 523). Ventling has continuously, since his original motion to vacate in 1997, pleaded fraud and other affirmative defenses in his attempt to avoid the alimony obligations, but at no point in the last thirteen years has the trial court explicitly ruled on the veracity of those pleadings.

We conclude that the trial court's denial of Johnson's motion to enforce the contractual alimony provisions in the 1995 decree, without reaching a conclusion as to Ventling's allegations of extrinsic fraud, accident, or mutual mistake of fact, was erroneous as a matter of law. *See Villagomez*, 210 S.W.3d at 728. Johnson's issues are therefore sustained in part. On remand, the trial court is instructed to determine, based on all the

---

[9] Ventling notes that the section 71 Internal Revenue Code defines "alimony" as "payment . . . received by (or on behalf of) a *spouse* . . . ." 26 U.S.C. § 71(b)(1)(A) (emphasis added). Ventling argues that, because he and Johnson were never married, and because the contractual alimony provisions contained in the 1995 decree specifically referenced this statute, the contract is unenforceable. The trial court appears to have adopted this reasoning in its conclusions of law. However, Internal Revenue Code section 71 specifically provides that its definitions are applicable only to that section. *See id.* § 71(b). Moreover, the issue of whether the payments are properly characterized as "alimony" for the purposes of federal tax law is irrelevant to the issue we consider here; that is, whether the terms of the 1995 decree are enforceable.

[10] Extrinsic fraud is defined as "fraud that denies a losing party the opportunity to fully litigate at trial all the rights or defenses that could have been asserted." *Browning v. Prostok*, 165 S.W.3d 336, 347 (Tex. 2005) (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 312 (Tex. 1984)). It generally includes wrongful conduct occurring outside of the adversarial proceedings. *Id.* (citing *Alexander v. Hagedorn*, 148 Tex. 565, 575, 226 S.W.2d 996, 1002 (1950)). The fraud must be collateral to the matter tried and not something which was actually or potentially in issue. *Id.* (citing *Montgomery*, 669 S.W.2d at 312). By contrast, intrinsic fraud, which may not form the basis of a collateral attack, "relates to the merits of the issues [that] were presented and presumably were or should have been settled in the former action." *Id.* at 347-48 (citing *Tice v. Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989)). Here, Ventling alleged in his response to Johnson's 1997 motion for enforcement that the alimony agreement "was the result of fraud, accident, mistake, and other improper motives of Patricia M. Johnson." These affirmative defenses are based on conduct by Johnson alleged to have occurred outside of the adversarial proceedings, and could not have been settled prior to entry of the 1995 decree. *See id.* at 347 (citing *Alexander*, 148 Tex. at 575, 226 S.W.2d at 1002); *id.* at 347-48 (citing *Tice*, 767 S.W.2d at 702). Accordingly, these defenses, if proven, would sustain Ventling's attack on the 1995 decree.

12

evidence, whether Johnson fraudulently induced Ventling to agree to the terms of the 1995 decree, or whether Ventling's affirmative defenses of accident or mutual mistake of fact are meritorious. If Ventling does not prove one of these affirmative defenses, the trial court must render judgment against Ventling with respect to this collateral attack on the 1995 decree, with such judgment to include: (1) $142,500 in damages, representing the unpaid contractual alimony; (2) appropriate prejudgment interest, *see Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998) (permitting the award of prejudgment interest based on general principles of equity); (3) reasonable attorney's fees; and (4) costs of court.

## III. CONCLUSION

We reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

DORI CONTRERAS GARZA
Justice

Delivered and filed the
15th day of July, 2010.