NUMBER 13-08-00122-CV


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RANDY M. MCCASKILL, Appellant,


v.


NORMAN RAY MCCASKILL, Appellee.

 
 

On appeal from the 267th District Court of

 Calhoun County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Garza and Vela

 Memorandum Opinion by Chief Justice Valdez

 

 Appellant, Randy M. McCaskill, appeals the trial court's denial of her: (1) petition
for a post-divorce division of her former husband's retirement benefits; (1) (2) petition for
"divorce of a common-law marriage"; (3) bill of review; and (4) motion for continuance. We
affirm.

I. Background

A. Procedural History

 Appellee, Norman Ray McCaskill (hereinafter referred to as Ray) and Randy were
married on December 24, 1999. On March 30, 2001, Ray filed a petition for divorce
accompanied by a waiver of citation bearing Randy's signature. On April 17, 2001, Randy
filed an answer, contesting Ray's petition for divorce as well as the waiver of citation. (2) On
June 20, 2001, the district court set the final hearing for the pro se divorce to be heard on
July 3, 2001. Randy filed a motion for continuance on June 27, 2001. However, on July
3, 2001, in a motion entitled "Continuance," Randy asked the court to "disregard the
Continuance and any papers filed by the Respondent," because she "no longer object[ed]
to the divorce." That same day, Randy appeared in court and the final divorce decree was
signed.

 Almost five years later, on April 11, 2006, Randy filed an original petition for post-divorce division of property in the 267th District Court of Calhoun County. The petition 
asserted that the July 3, 2001 divorce decree failed to divide, among other things, Ray's
retirement benefits. On April 19, 2006, Ray filed a general denial, special exceptions, and
a motion to strike evidentiary facts from the pleadings, contending that Randy's allegations
of undivided property were "without basis in fact." On August 9, 2006, Randy filed an
"Original Petition for Divorce" in County Court at Law Number One of Calhoun County. 
The petition asserted that Ray and Randy entered into a common-law marriage "on or
about July 4, 2001" and "ceased to live together as husband and wife on or about February
10, 2006." By this petition, Randy sought to obtain a divorce for the common-law marriage
she claimed existed from 2001 to 2006. Ray subsequently filed a general denial. These
cases were consolidated into the district court proceeding, and the court set the case for
a jury trial to be held on December 10, 2007. Although the case was later moved to the
non-jury docket, the case was heard on December 10, 2007. 

B. December 10, 2007 Proceeding

 On December 10, 2007, the case was called to trial with the court set to rule on the
following: (1) a motion for continuance; (2) a motion to sever; (3) a petition for bill of
review; (4) a petition for post-divorce partition of property; and (5) a petition for divorce,
alleging a common-law marriage. The court denied the motion for continuance and the
petition for bill of review and heard arguments from counsel concerning the post-divorce
partition of property. The trial court then heard testimony concerning whether Ray's
retirement benefits had been divided in the 2001 divorce, and whether Ray and Randy
were common-law spouses from 2001 to 2006.

 1. Randy McCaskill

 Randy testified that immediately after their 2001 divorce, Ray "begged" her to
continue to live with him "as husband and wife, just like we are," and not to tell anyone that
they had divorced. Randy agreed to stay and continued to live with Ray until January of
2006. Randy testified that she did not receive a copy of the 2001 divorce decree until
2006. During her testimony, several birthday and holiday cards purportedly given to her
by Ray after the divorce were entered into evidence. Randy told the court that she and
Ray first represented to others that they were married following the 2001 divorce by
sleeping in the same bed in her mother's house during the Christmas holidays. 

 A bankruptcy petition filed by Randy in 2005 stated that she was single and had
divorced Ray in 2001. The following testimony concerning the petition was elicited during
Randy's direct examination:

Q. [Randy's counsel] You've signed this document. Did you not tell
the United States Government that you were a
single woman?


A. [Randy] No, I did not.


Q: Would you mind reading what's on this form.


A: I can see it, it says single. And I did not tell the
United States Federal Government that I was a
single woman. . . . But I didn't fill the paperwork
out, I had an attorney do it so I wouldn't get in
trouble.


Additionally, Randy testified that after the divorce, she filed her tax returns as single. 

 2. Ray McCaskill

 Ray testified that, although he and Randy "sometimes" lived together after the 2001
divorce, he never intended to be, nor told anyone that they were, married. He testified that
Randy would stay with him for one to four weeks and then would leave to go live in the
back of her upholstery shop where she had a bed, refrigerator, and bathroom. Ray stated
that Randy would return to his home when she was in need of money. Ray further stated
that he "told lots of people" that he and Randy were divorced. When asked by Randy's
counsel about his motive in giving birthday and holiday cards to Randy, Ray stated that
although he did not believe that he gave her cards after the divorce, if he had given her a
card, it was to "make things better." Additionally, Ray noted that after the divorce he filed
his tax returns as single, and Randy was not covered under his health insurance.

 Ray testified that he retired in July 2001, around the same time he and Randy
divorced, because the company he worked for offered him a severance package and gave
him only thirty days to decide whether to take it. He stated that he had a 401K and a
pension plan at the time of the divorce. 

 After Ray's testimony, the court heard conflicting testimony from the friends and
family of both parties. While some testified that Ray referred to Randy as his wife after the
2001 divorce, others testified that he did not. After hearing testimony, the trial court denied
all claims and suits. Randy's motion for new trial was denied by written order on January
22, 2008. No findings of fact or conclusions of law were timely requested. This appeal
ensued.

II. Post-Divorce Division of Property

 In her first two issues, Randy contends that: (1) the trial court abused its discretion
in failing to grant her post-divorce division of property; and (2) the evidence is legally
insufficient to support the trial court's findings. 

A. Standard of Review

 A trial court has broad discretion in dividing property. Schlueter v. Schlueter, 975
S.W.2d 584, 589 (Tex. 1998). In this case, the trial court below did not divide property;
instead, it found that the 2001 divorce disposed of all property. Because the finding made
by the trial court is intimately linked to the division of property we apply the abuse of
discretion standard. A trial court abuses its discretion by acting arbitrarily, unreasonably,
or without consideration of guiding principles. Walker v. Gutierrez, 111 S.W.3d 56, 62
(Tex. 2003). "Under an abuse of discretion standard, legal and factual sufficiency are not
independent grounds of error, but are relevant factors in assessing whether the trial court
abused its discretion." Zorilla v. Wahid, 83 S.W.3d 247, 252 (Tex. App.-Corpus Christi
2002, no pet.). 

 In a non-jury trial, when no findings of fact or conclusions of law are requested or
filed, as is the case here, we imply all necessary findings in support of the trial court's
judgment. Holt Atherton Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992); City of
Brownsville v. Teran, 907 S.W.2d 593, 595 (Tex. App.-Corpus Christi 1995, no writ). 
When a reporter's record is included in the record, the implied findings may be challenged
for legal and factual sufficiency the same as jury findings or a trial court's findings of fact. 
See BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002). 

 When a party attacks the legal sufficiency of an adverse finding on an issue upon
which it had the burden of proof, the party must demonstrate on appeal that the evidence
establishes, as a matter of law, all vital facts in support of the issue. Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 241 (Tex. 2001). In a legal sufficiency review, we review the
evidence in the light most favorable to the verdict, crediting evidence that supports the
verdict if reasonable jurors could and disregarding all contrary evidence that a reasonable
jury could have disbelieved. See City of Keller v. Wilson, 168 S.W.3d 802, 822 (Tex.
2005). 

B. Applicable Law

 A trial court may order the post-divorce division of community property which was
not divided in a final divorce decree. See Tex. Fam. Code Ann. § 9.201 (Vernon 2006).
However, where one party seeks to claim a share of an asset that was already divided in
the divorce decree, the claim is barred. Brown v. Brown, 236 S.W.3d 343, 349 (Tex.
App.-Houston [1st Dist.] 2007, no pet.). 

 A judgment finalizing a divorce and partitioning the property represents res judicata
as to any attempt to relitigate the division of property at a later time. Reiss v. Reiss, 118
S.W.3d 439, 443 (Tex. 2003); Day v. Day, 603 S.W.2d 213, 215 (Tex. 1980). "Res
judicata bars relitigation of claims which have been finally adjudicated or arise out of the
same subject matter and could have been litigated in the prior action." Brown, 236 S.W.3d
at 348 (citing Martin v. Martin, Martin & Richards, Inc., 989 S.W.2d 357, 358 (Tex. 1998)
(per curiam)). "Res judicata applies to a final divorce decree; barring subsequent collateral
attack even if the divorce decree improperly divided the property." Id. at 347 (citing Baxter
v. Ruddle, 794 S.W.2d 761, 762 (Tex. 1990); Cook v. Cameron, 733 S.W.2d 137, 140
(Tex. 1987)). 

C. Analysis

 Randy argues that the doctrine of res judicata does not bar division of Ray's
retirement benefits because his retirement benefits "were never before the Court [in the
2001 divorce] for division." While not conceding that his retirement benefits were
community property, Ray argues that his retirement benefits were before the court in the
2001 divorce and, assuming the benefits were community property, the divorce decree
erroneously characterized the retirement benefits as separate property in its division of
property.

 In the absence of findings, we must affirm the judgment on any theory of law
supported by the evidence. Woford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990); In re
W.E.R., 669 S.W.2d 716, 717 (Tex. 1984); Teran, 907 S.W.2d at 595. Randy, as the
appellant of the post-divorce partition proceeding, bears the burden of establishing that
Ray's retirement benefits were not divided in the 2001 divorce. See Brown, 236 S.W.3d
at 349 (holding that post-divorce division of wife's retirement benefits was barred by res
judicata where husband failed to support his contention that retirement benefits had not
been addressed or divided in the divorce proceeding). Randy points to the language of the
divorce decree in support of her contention. 

 The divorce decree provides that "THE COURT FINDS THAT the parties do not own
any community property of any significant value other than their personal effects." 
Although this language unambiguously conveys that the parties did not own community
property at the time of the divorce, the language of the divorce decree does not establish
whether Ray's retirement benefits were characterized as separate property.

 During the bench trial, Ray testified that at the time of the divorce, Randy was aware
of his retirement benefits. He also testified that: (1) he and Randy had already "worked 
out" everything and divided all of their property between themselves; and (2) Randy drafted
the divorce papers. Ray also introduced a notarized memo written and signed by Randy
in 1997, in which she promised to pay back money she borrowed from Ray. In addition to
promising to pay him back, she stated, "I do not consider any of his belongings as
community property," and "I agree to take only what I have brought into the marriage and
only what I have accumulated during the marriage." Randy testified that she knew about
Ray's retirement benefits at the time of their divorce, and that "he told [her] about all of the
stuff that he had." Randy further testified that she was in court the day that the divorce
decree was signed. 

 At the conclusion of the post-divorce partition proceeding, the trial court stated, "I
think there's nothing to divide is the same thing as a division, as a disbursement. I'm pretty
sure that that [sic] finding establishes the fact that there is no community. It's not like being
silent as to how the community should be divided, it's a finding that there is no community
to divide."

 Based on this evidence, the trial court could have found that the trial court in the
2001 divorce erroneously characterized Ray's retirement benefits as his separate property
at the time of the divorce. See Woford, 801 S.W.2d at 109 (Tex. 1990) (noting that where
no findings of fact or conclusions of law are requested an appellate court implies that the
trial court made all the findings necessary to support its judgment). Because the trial court
below could have found that the 2001 divorce proceeding divided Ray's retirement
benefits, any attempt to relitigate the division of Ray's retirement benefits is barred by res
judicata. See Reiss, 118 S.W.3d at 443. Accordingly, the trial court did not abuse its
discretion by denying Randy's petition for post-divorce partition of property. Randy's first
and second issues are overruled.III. Petition for Common-Law Marriage

 In her third and fourth issues, Randy challenges the factual sufficiency of the
evidence supporting the finding that a common-law marriage did not exist.

A. Standard of Review 

 When a party attacks the factual sufficiency of an adverse finding on an issue on
which it has the burden of proof, the party must demonstrate on appeal that the adverse
finding is against the great weight and preponderance of the evidence. Francis, 46 S.W.3d
at 241. In reviewing factual sufficiency, we consider and weigh all of the evidence and set
aside the finding only if it is so against the great weight and preponderance of the evidence
that it is clearly wrong and unjust. Id.

B. Applicable Law

 To find that a common law marriage exists in Texas, the following elements must
be established: (1) an agreement to be married; (2) living together in Texas as husband
and wife subsequent to the agreement to be married; and (3) representing to others in
Texas that they were married. See Tex. Fam. Code Ann. § 2.401(a)(2) (Vernon 2006). A
common-law marriage does not exist until the concurrence of all three elements. Winfield
v. Renfro, 821 S.W.2d 640, 645 (Tex. App.-Houston [1st Dist.] 1991, writ denied). An
agreement to be married requires that "the parties intended to have a present, immediate,
and permanent marital relationship and that they did in fact agree to be husband and wife." 
Eris v. Phares, 39 S.W.3d 708, 714 (Tex. App.-Houston [1st Dist.] 2001, pet. denied). The
agreement to be married may be established by direct or circumstantial evidence. Russell
v. Russell, 865 S.W.2d 929, 933 (Tex. 1993). Cohabitation need not be continuous, see
Bolash v. Heid, 733 S.W.2d 698, 699 (Tex. App.-San Antonio 1987, no writ), and is
determined on a case-by-case basis. Russell, 865 S.W.2d at 933.

 The statutory requirement of "represent[ing] to others," or "holding out," may be
established by the conduct and actions of the parties. Eris, 39 S.W.3d at 715. Spoken
words are not necessary to establish representation as husband and wife. Winfield, 821
S.W.2d at 645. Written references to the marriage or to a party as "spouse" are evidence
of "holding out." See Persons v. Persons, 666 S.W.2d 560, 563 (Tex. App.-Houston [1st
Dist.] 1984, writ ref'd n.r.e.) (holding that a reference to one party as "spouse" in credit
application was evidence of holding out).

C. Analysis

 At the conclusion of the bench trial, the court stated:

I'm in a situation where I don't have the [agreement] prong that you want me
to have to say that there's a common law marriage. I've got the other two,
you proved the other two, no question in my mind. But you haven't proved
that agreement, a meeting of the minds.


We, therefore, focus our analysis on whether the court erred in finding that Ray and Randy
did not agree to enter into a common-law marriage in 2001.

 Ray testified that although Randy lived with him after their 2001 divorce, they did not
enter into an agreement to be married. He testified that after their 2001 divorce he: (1)
filed as single on his income tax returns; (2) did not introduce or refer to Randy as his wife;
and (3) did not cover Randy under his health insurance. The court also heard testimony
from Ray's friends and family members that after the 2001 divorce Ray did not refer to
Randy as his wife or do anything to indicate that he and Randy were still married. Randy
testified that a bankruptcy petition that she filed in 2005, indicated that Ray was her "former
husband" and that she was a single woman. She also testified that she filed her tax
returns as single. 

 Evidence contrary to the court's finding includes Randy's testimony that after the
2001 divorce, they agreed to continue living together as husband and wife. Witnesses for
Randy testified that after the 2001 divorce, Ray referred to Randy as his wife. Randy also
introduced several holiday and birthday cards purportedly given to her by Ray into
evidence.

 After considering and weighing all of the evidence, we cannot conclude that the
evidence is so weak or that the court's finding that no common-law marriage existed is so
against the great weight and preponderance of the evidence that it is clearly wrong and
unjust. See Francis, 46 S.W.3d at 241; see also Maldonado v. Maldonado, No.
04-02-00818-CV, 2003 WL 21653876, at *7 (Tex. App.-San Antonio July 16, 2003, no
pet.) (mem. op.) (concluding that although evidence suggested that the parties "had a close
relationship" the evidence did not necessarily support a marital relationship). We conclude
that the evidence is factually sufficient to support the trial court's denial of Randy's petition
for common-law marriage. Randy's third and fourth issues are overruled.

IV. Bill of Review

 In her fifth issue, Randy contends that the trial court abused its discretion by denying
her bill of review proceeding as to the 2001 divorce without hearing any evidence, thereby,
preventing her from amending her petition or bill of review to correct any pleading defects. 

A. Standard of Review and Applicable Law

 "A bill of review is an equitable proceeding to set aside a judgment that is not void
on the face of the record but is no longer appealable or subject to a motion for new trial." 
King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003). "A bill of review is proper
where a party has exercised due diligence to prosecute all adequate legal remedies
against a former judgment, and at the time the bill of review is filed, there remains no such
adequate legal remedy still available because, through no fault of the bill's proponent,
fraud, accident, or mistake precludes presentation of a meritorious claim or defense." Id. 
A petitioner seeking to set aside a prior judgment by bill of review must plead and prove
(1) a meritorious defense to the cause of action alleged to support the judgment; (2) that
the petitioner was prevented from making by the fraud, accident or wrongful act of his or
her opponent; and (3) the petitioner was not negligent. Id. at 752 (citing Alexander v.
Hagedorn, 226 S.W.2d 996, 998 (Tex. 1950)). 

 Absent a showing of extrinsic fraud, a bill of review must be filed within four years
of the date of the judgment which the proponent seeks to set aside. See Tex. Civ. Prac.
& Rem. Code Ann. § 16.051 (Vernon 2008); Caldwell v. Barnes, 975 S.W.2d 535, 538 (Tex.
1998). "Extrinsic fraud" is fraud that denies a party the opportunity to fully litigate all the
rights and defenses that the party was entitled to assert at trial. King Ranch, 118 S.W.3d
at 752; Law v. Law, 792 S.W.2d 150, 153 (Tex. App.-Houston 1990, writ denied). To bring
a bill outside the limitations period, it is the petitioner's burden to show the presence of
extrinsic fraud. See Manley v. Parsons, 112 S.W.3d 335, 338 (Tex. App.-Corpus Christi
2003, pet. denied). "We review the granting or denial of a bill of review under an abuse of
discretion standard." Id. at 337.

B. Analysis

 Randy contends that the trial court did not hear evidence or give her a chance to
correct defects in her bill of review; however, the record does not support her contention. 
Randy filed her bill of review on November 30, 2007. A notice of setting for the bill of
review was filed on December 4, 2007. On December 10, 2007, the trial court heard
argument from counsel in order to determine whether extrinsic fraud existed to overcome
the statute of limitations.

 On appeal, Randy argues that extrinsic fraud exists because service of process for
the 2001 divorce was improper. Ray filed the divorce petition on March 30, 2001. Randy
filed an answer on April 17, 2001, and a motion for continuance on June 27, 2001. Randy
did not complain of defective or improper service in either her answer or motion for
continuance. Additionally, on the day of the final divorce hearing, Randy filed a motion to
disregard the motion for continuance and was in the courtroom when the court signed the
divorce decree. The filing of an answer or some other appearance generally waives any
defect in the service of citation. See Alcala v. Williams, 908 S.W.2d 54, 56 (Tex. App.-San
Antonio 1995, no writ); Schulz v. Schulz, 726 S.W.2d 256, 258 (Tex. App.-Austin 1987,
no writ). Additionally, without proof of extrinsic fraud, Randy's bill of review was barred by
the four year statute of limitations. See Temple v. Archambo, 161 S.W.3d 217, 227 (Tex.
App.-Corpus Christi 2005, no pet.). Accordingly, we cannot conclude that the trial court
acted without reference to guiding rules and principles or that its actions were arbitrary and
unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). Randy's fifth issue is overruled.

V. Motion for Continuance

 In her sixth issue, Randy challenges the trial court's denial of her motion for
continuance. Upon review of the record, we find two separate motions for continuance. 
One motion seeks a continuance to allow newly obtained counsel adequate time to prepare
for a hearing set for November 19, 2007. (3) The second motion seeks a continuance to
allow counsel adequate time to prepare for a December 10, 2007 hearing. The clerk's
record contains a single order denying Randy's continuance without reference to which
motion it is denying. Although Randy asserts that "the trial court abused its discretion in
not granting a continuance in this matter," she does not provide citations to the particular
motion that was denied. See Tex. R. App. P. 38.1(i). In the absence of appropriate
citations, Randy has failed to adequately develop her arguments regarding this issue. See
id. Because it is inadequately briefed, this issue is waived. Accordingly, we overrule
Randy's sixth issue.

V. Conclusion

 Having overruled all of Randy's issues, we affirm the trial court's judgment.

 ROGELIO VALDEZ

 Chief Justice

 


Memorandum Opinion delivered and 

filed on this the 15th day of October, 2009. 
1. The retirement at issue consisted of a 401K, a pension plan, and a severance package; for clarity,
we refer to this property collectively as "retirement benefits."
2. Randy's answer stated the following:


The Waiver of Citation is not valid since it was signed November 24, 1999 which is
17 months before the Original Petition for Divorce and the Waiver of Citation. 
Respondent does want to be notified of any proceedings and/or court dates for Cause
No. 2001-3-13952 and I will be present at for [sic] all proceedings.
3. A motion to withdraw by Randy's original counsel does not appear in the record. However, new
counsel filed an appearance on November 14, 2007.