

## NUMBER 13-08-00122-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**RANDY M. MCCASKILL,**                                          **Appellant,**

**v.**

**NORMAN RAY MCCASKILL,**                                          **Appellee.**

### On appeal from the 267th District Court
### of Calhoun County, Texas.

## MEMORANDUM OPINION ON REHEARING[1]

### Before Chief Justice Valdez and Justices Garza and Vela
### Memorandum Opinion on Rehearing by Chief Justice Valdez

Appellant, Randy M. McCaskill, appeals the trial court's denial of her:  (1) petition

for a post-divorce division of her former husband's retirement benefits;[2] (2) petition for

---

[1] Appellant, Randy M. McCaskill's motion for rehearing, motion for en banc reconsideration, and motion for this opinion to be designated for publication are denied.  However, we withdraw our memorandum opinion dated October 15, 2009 and substitute this memorandum opinion in its place.

[2] The retirement at issue consisted of a 401K, a pension plan, and a severance package; for clarity, we refer to this property collectively as "retirement benefits."

"divorce of a common-law marriage"; (3) bill of review; and (4) motion for continuance. We affirm.

## I. BACKGROUND

### A.    Procedural History

Appellee, Norman Ray McCaskill (hereinafter referred to as Ray) and Randy were married on December 24, 1991. On March 30, 2001, Ray filed a petition for divorce accompanied by a waiver of citation bearing Randy's signature. On April 17, 2001, Randy filed an answer, contesting Ray's petition for divorce as well as the waiver of citation.[3] On June 20, 2001, the district court set the final hearing for the pro se divorce to be heard on July 3, 2001. Randy filed a motion for continuance on June 27, 2001. However, on July 3, 2001, in a motion entitled "Continuance," Randy asked the court to "disregard the Continuance and any papers filed by the Respondent," because she "no longer object[ed] to the divorce." That same day, Randy appeared in court and the final divorce decree was signed.

Almost five years later, on April 11, 2006, Randy filed an original petition for post-divorce division of property in the 267th District Court of Calhoun County. The petition asserted that the July 3, 2001 divorce decree failed to divide, among other things, Ray's retirement benefits. On April 19, 2006, Ray filed a general denial, special exceptions, and a motion to strike evidentiary facts from the pleadings, contending that Randy's allegations of undivided property were "without basis in fact." On August 9, 2006, Randy filed an "Original Petition for Divorce" in County Court at Law Number One of Calhoun County. The petition asserted that Ray and Randy entered into a common-law marriage "on or

---

[3] Randy's answer stated the following:

> The Waiver of Citation is not valid since it was signed November 24, 1999 which is 17 months before the Original Petition for Divorce and the Waiver of Citation. Respondent does want to be notified of any proceedings and/or court dates for Cause No. 2001-3-13952 and I will be present at for [sic] all proceedings.

2

about July 4, 2001" and "ceased to live together as husband and wife on or about February 10, 2006." By this petition, Randy sought to obtain a divorce for the common-law marriage she claimed existed from 2001 to 2006. Ray subsequently filed a general denial. These cases were consolidated into the district court proceeding, and the court set the case for a jury trial to be held on December 10, 2007. Although the case was later moved to the non-jury docket, the case was heard on December 10, 2007.

## B.     December 10, 2007 Proceeding

On December 10, 2007, the case was called to trial with the court set to rule on the following: (1) a motion for continuance; (2) a motion to sever; (3) a petition for bill of review; (4) a petition for post-divorce partition of property; and (5) a petition for divorce, alleging a common-law marriage. The court denied the motion for continuance and the petition for bill of review and heard arguments from counsel concerning the post-divorce partition of property. The trial court then heard testimony concerning whether Ray's retirement benefits had been divided in the 2001 divorce, and whether Ray and Randy were common-law spouses from 2001 to 2006.

### 1. Randy McCaskill

Randy testified that immediately after their 2001 divorce, Ray "begged" her to continue to live with him "as husband and wife, just like we are," and not to tell anyone that they had divorced. Randy agreed to stay and continued to live with Ray until January of 2006. Randy testified that she did not receive a copy of the 2001 divorce decree until 2006. During her testimony, several birthday and holiday cards purportedly given to her by Ray after the divorce were entered into evidence. Randy told the court that she and Ray first represented to others that they were married following the 2001 divorce by sleeping in the same bed in her mother's house during the Christmas holidays.

A bankruptcy petition filed by Randy in 2005 stated that she was single and had

3

divorced Ray in 2001. The following testimony concerning the petition was elicited during Randy's direct examination:

> Q. [Randy's counsel]   You've signed this document. Did you not tell the United States Government that you were a single woman?
>
> A. [Randy]   No, I did not.
>
> Q:   Would you mind reading what's on this form.
>
> A:   I can see it, it says single. And I did not tell the United States Federal Government that I was a single woman. . . . But I didn't fill the paperwork out, I had an attorney do it so I wouldn't get in trouble.

Additionally, Randy testified that after the divorce, she filed her tax returns as single.

**2. Ray McCaskill**

Ray testified that, although he and Randy "sometimes" lived together after the 2001 divorce, he never intended to be, nor told anyone that they were, married. He testified that Randy would stay with him for one to four weeks and then would leave to go live in the back of her upholstery shop where she had a bed, refrigerator, and bathroom. Ray stated that Randy would return to his home when she was in need of money. Ray further stated that he "told lots of people" that he and Randy were divorced. When asked by Randy's counsel about his motive in giving birthday and holiday cards to Randy, Ray stated that although he did not believe that he gave her cards after the divorce, if he had given her a card, it was to "make things better." Additionally, Ray noted that after the divorce he filed his tax returns as single, and Randy was not covered under his health insurance.

Ray testified that he retired in July 2001, around the same time he and Randy divorced, because the company he worked for offered him a severance package and gave him only thirty days to decide whether to take it. He stated that he had a 401K and a pension plan at the time of the divorce.

4

After Ray's testimony, the court heard conflicting testimony from the friends and family of both parties. While some testified that Ray referred to Randy as his wife after the 2001 divorce, others testified that he did not. After hearing testimony, the trial court denied all claims and suits. Randy's motion for new trial was denied by written order on January 22, 2008. No findings of fact or conclusions of law were timely requested. This appeal ensued.

## II. POST-DIVORCE DIVISION OF PROPERTY

In her first two issues, Randy contends that: (1) the trial court abused its discretion in failing to grant her post-divorce division of property; and (2) the evidence is legally insufficient to support the trial court's findings.

### A. Standard of Review

A trial court has broad discretion in dividing property. *Schlueter v. Schlueter*, 975 S.W.2d 584, 589 (Tex. 1998). In this case, the trial court below did not divide property; instead, it found that the 2001 divorce disposed of all property. Because the finding made by the trial court is intimately linked to the division of property we apply the abuse of discretion standard. A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). "Under an abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but are relevant factors in assessing whether the trial court abused its discretion." *Zorilla v. Wahid*, 83 S.W.3d 247, 252 (Tex. App.–Corpus Christi 2002, no pet.).

In a non-jury trial, when no findings of fact or conclusions of law are requested or filed, as is the case here, we imply all necessary findings in support of the trial court's judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992); *City of Brownsville v. Teran*, 907 S.W.2d 593, 595 (Tex. App.–Corpus Christi 1995, no writ).

5

When a reporter's record is included in the record, the implied findings may be challenged for legal and factual sufficiency the same as jury findings or a trial court's findings of fact. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

When a party attacks the legal sufficiency of an adverse finding on an issue upon which it had the burden of proof, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In a legal sufficiency review, we review the evidence in the light most favorable to the verdict, crediting evidence that supports the verdict if reasonable jurors could and disregarding all contrary evidence that a reasonable jury could have disbelieved. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

## B. Applicable Law

A trial court may order the post-divorce division of community property which was not divided in a final divorce decree. *See* TEX. FAM. CODE ANN. § 9.201 (Vernon 2006). However, where one party seeks to claim a share of an asset that was already divided in the divorce decree, the claim is barred. *Brown v. Brown*, 236 S.W.3d 343, 349 (Tex. App.–Houston [1st Dist.] 2007, no pet.).

A judgment finalizing a divorce and partitioning the property represents res judicata as to any attempt to relitigate the division of property at a later time. *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003); *Day v. Day*, 603 S.W.2d 213, 215 (Tex. 1980). "Res judicata bars relitigation of claims which have been finally adjudicated or arise out of the same subject matter and could have been litigated in the prior action." *Brown*, 236 S.W.3d at 348 (citing *Martin v. Martin, Martin & Richards, Inc.*, 989 S.W.2d 357, 358 (Tex. 1998) (per curiam)). "Res judicata applies to a final divorce decree; barring subsequent collateral attack even if the divorce decree improperly divided the property." *Id.* at 347 (citing *Baxter*

6

*v. Ruddle*, 794 S.W.2d 761, 762 (Tex. 1990); *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987)).

**C.      Analysis**

Randy argues that the doctrine of res judicata does not bar division of Ray's retirement benefits because his retirement benefits "were never before the Court [in the 2001 divorce] for division."  While not conceding that his retirement benefits were community property, Ray argues that his retirement benefits were before the court in the 2001 divorce and, assuming the benefits were community property, the divorce decree erroneously characterized the retirement benefits as separate property in its division of property.

In the absence of findings, we must affirm the judgment on any theory of law supported by the evidence.  *Woford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984); *Teran*, 907 S.W.2d at 595.  Randy, as the appellant of the post-divorce partition proceeding, bears the burden of establishing that Ray's retirement benefits were not divided in the 2001 divorce.  *See Brown*, 236 S.W.3d at 349 (holding that post-divorce division of wife's retirement benefits was barred by res judicata where husband failed to support his contention that retirement benefits had not been addressed or divided in the divorce proceeding).  Randy points to the language of the divorce decree in support of her contention.

The divorce decree provides that "THE COURT FINDS THAT the parties do not own any community property of any significant value other than their personal effects." Although this language unambiguously conveys that the parties did not own community property at the time of the divorce, the language of the divorce decree does not establish whether Ray's retirement benefits were characterized as separate property.

During the bench trial, Ray testified that at the time of the divorce, Randy was aware

7

of his retirement benefits. He also testified that: (1) he and Randy had already "worked out" everything and divided all of their property between themselves; and (2) Randy drafted the divorce papers. Ray also introduced a notarized memo written and signed by Randy in 1997, in which she promised to pay back money she borrowed from Ray. In addition to promising to pay him back, she stated, "I do not consider any of his belongings as community property," and "I agree to take only what I have brought into the marriage and only what I have accumulated during the marriage." Randy testified that she knew about Ray's retirement benefits at the time of their divorce, and that "he told [her] about all of the stuff that he had." Randy further testified that she was in court the day that the divorce decree was signed.

At the conclusion of the post-divorce partition proceeding, the trial court stated, "I think there's nothing to divide is the same thing as a division, as a disbursement. I'm pretty sure that that [sic] finding establishes the fact that there is no community. It's not like being silent as to how the community should be divided, it's a finding that there is no community to divide."

Based on this evidence, the trial court could have found that the trial court in the 2001 divorce erroneously characterized Ray's retirement benefits as his separate property at the time of the divorce. *See Woford*, 801 S.W.2d at 109 (Tex. 1990) (noting that where no findings of fact or conclusions of law are requested an appellate court implies that the trial court made all the findings necessary to support its judgment). Because the trial court below could have found that the 2001 divorce proceeding divided Ray's retirement benefits, any attempt to relitigate the division of Ray's retirement benefits is barred by res judicata. *See Reiss*, 118 S.W.3d at 443. Accordingly, the trial court did not abuse its discretion by denying Randy's petition for post-divorce partition of property. Randy's first and second issues are overruled.

8

## III. PETITION FOR COMMON-LAW MARRIAGE

In her third and fourth issues, Randy challenges the factual sufficiency of the evidence supporting the finding that a common-law marriage did not exist.

### A. Standard of Review

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, the party must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Francis*, 46 S.W.3d at 241. In reviewing factual sufficiency, we consider and weigh all of the evidence and set aside the finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

### B. Applicable Law

To find that a common law marriage exists in Texas, the following elements must be established: (1) an agreement to be married; (2) living together in Texas as husband and wife subsequent to the agreement to be married; and (3) representing to others in Texas that they were married. *See* TEX. FAM. CODE ANN. § 2.401(a)(2) (Vernon 2006). A common-law marriage does not exist until the concurrence of all three elements. *Winfield v. Renfro*, 821 S.W.2d 640, 645 (Tex. App.–Houston [1st Dist.] 1991, writ denied). An agreement to be married requires that "the parties intended to have a present, immediate, and permanent marital relationship and that they did in fact agree to be husband and wife." *Eris v. Phares*, 39 S.W.3d 708, 714 (Tex. App.–Houston [1st Dist.] 2001, pet. denied). The agreement to be married may be established by direct or circumstantial evidence. *Russell v. Russell*, 865 S.W.2d 929, 933 (Tex. 1993). Cohabitation need not be continuous, *see Bolash v. Heid*, 733 S.W.2d 698, 699 (Tex. App.–San Antonio 1987, no writ), and is determined on a case-by-case basis. *Russell*, 865 S.W.2d at 933.

The statutory requirement of "represent[ing] to others," or "holding out," may be

established by the conduct and actions of the parties. *Eris*, 39 S.W.3d at 715. Spoken words are not necessary to establish representation as husband and wife. *Winfield*, 821 S.W.2d at 645. Written references to the marriage or to a party as "spouse" are evidence of "holding out." *See Persons v. Persons*, 666 S.W.2d 560, 563 (Tex. App.–Houston [1st Dist.] 1984, writ ref'd n.r.e.) (holding that a reference to one party as "spouse" in credit application was evidence of holding out).

## C.      Analysis

At the conclusion of the bench trial, the court stated:

> I'm in a situation where I don't have the [agreement] prong that you want me to have to say that there's a common law marriage. I've got the other two, you proved the other two, no question in my mind. But you haven't proved that agreement, a meeting of the minds.

We, therefore, focus our analysis on whether the court erred in finding that Ray and Randy did not agree to enter into a common-law marriage in 2001.

Ray testified that although Randy lived with him after their 2001 divorce, they did not enter into an agreement to be married. He testified that after their 2001 divorce he: (1) filed as single on his income tax returns; (2) did not introduce or refer to Randy as his wife; and (3) did not cover Randy under his health insurance. The court also heard testimony from Ray's friends and family members that after the 2001 divorce Ray did not refer to Randy as his wife or do anything to indicate that he and Randy were still married. Randy testified that a bankruptcy petition that she filed in 2005, indicated that Ray was her "former husband" and that she was a single woman. She also testified that she filed her tax returns as single.

Evidence contrary to the court's finding includes Randy's testimony that after the 2001 divorce, they agreed to continue living together as husband and wife. Witnesses for Randy testified that after the 2001 divorce, Ray referred to Randy as his wife. Randy also

10

introduced several holiday and birthday cards purportedly given to her by Ray into evidence.

After considering and weighing all of the evidence, we cannot conclude that the evidence is so weak or that the court's finding that no common-law marriage existed is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *See Francis*, 46 S.W.3d at 241; *see also Maldonado v. Maldonado*, No. 04-02-00818-CV, 2003 WL 21653876, at *7 (Tex. App.–San Antonio July 16, 2003, no pet.) (mem. op.) (concluding that although evidence suggested that the parties "had a close relationship" the evidence did not necessarily support a marital relationship). We conclude that the evidence is factually sufficient to support the trial court's denial of Randy's petition for common-law marriage. Randy's third and fourth issues are overruled.

## IV. BILL OF REVIEW

In her fifth issue, Randy contends that the trial court abused its discretion by denying her bill of review proceeding as to the 2001 divorce without hearing any evidence, thereby, preventing her from amending her petition or bill of review to correct any pleading defects.

### A.    Standard of Review and Applicable Law

"A bill of review is an equitable proceeding to set aside a judgment that is not void on the face of the record but is no longer appealable or subject to a motion for new trial." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "A bill of review is proper where a party has exercised due diligence to prosecute all adequate legal remedies against a former judgment, and at the time the bill of review is filed, there remains no such adequate legal remedy still available because, through no fault of the bill's proponent, fraud, accident, or mistake precludes presentation of a meritorious claim or defense." *Id.* A petitioner seeking to set aside a prior judgment by bill of review must plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment; (2) that

11

the petitioner was prevented from making by the fraud, accident or wrongful act of his or her opponent; and (3) the petitioner was not negligent. *Id.* at 752 (citing *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950)).

Absent a showing of extrinsic fraud, a bill of review must be filed within four years of the date of the judgment which the proponent seeks to set aside. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051 (Vernon 2008); *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998). "Extrinsic fraud" is fraud that denies a party the opportunity to fully litigate all the rights and defenses that the party was entitled to assert at trial. *King Ranch*, 118 S.W.3d at 752; *Law v. Law*, 792 S.W.2d 150, 153 (Tex. App.–Houston 1990, writ denied). To bring a bill outside the limitations period, it is the petitioner's burden to show the presence of extrinsic fraud. *See Manley v. Parsons*, 112 S.W.3d 335, 338 (Tex. App.–Corpus Christi 2003, pet. denied). "We review the granting or denial of a bill of review under an abuse of discretion standard." *Id.* at 337.

## B. Analysis

Randy contends that the trial court did not hear evidence or give her a chance to correct defects in her bill of review; however, the record does not support her contention. Randy filed her bill of review on November 30, 2007. A notice of setting for the bill of review was filed on December 4, 2007. On December 10, 2007, the trial court heard argument from counsel in order to determine whether extrinsic fraud existed to overcome the statute of limitations.

On appeal, Randy argues that extrinsic fraud exists because service of process for the 2001 divorce was improper. Ray filed the divorce petition on March 30, 2001. Randy filed an answer on April 17, 2001, and a motion for continuance on June 27, 2001. Randy did not complain of defective or improper service in either her answer or motion for continuance. Additionally, on the day of the final divorce hearing, Randy filed a motion to

disregard the motion for continuance and was in the courtroom when the court signed the divorce decree. The filing of an answer or some other appearance generally waives any defect in the service of citation. *See Alcala v. Williams*, 908 S.W.2d 54, 56 (Tex. App.–San Antonio 1995, no writ); *Schulz v. Schulz*, 726 S.W.2d 256, 258 (Tex. App.–Austin 1987, no writ). Additionally, without proof of extrinsic fraud, Randy's bill of review was barred by the four year statute of limitations. *See Temple v. Archambo*, 161 S.W.3d 217, 227 (Tex. App.–Corpus Christi 2005, no pet.). Accordingly, we cannot conclude that the trial court acted without reference to guiding rules and principles or that its actions were arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Randy's fifth issue is overruled.

### V. MOTION FOR CONTINUANCE

In her sixth issue, Randy challenges the trial court's denial of her motion for continuance. Upon review of the record, we find two separate motions for continuance. One motion seeks a continuance to allow newly obtained counsel adequate time to prepare for a hearing set for November 19, 2007.[4] The second motion seeks a continuance to allow counsel adequate time to prepare for a December 10, 2007 hearing. The clerk's record contains a single order denying Randy's continuance without reference to which motion it is denying. Although Randy asserts that "the trial court abused its discretion in not granting a continuance in this matter," she does not provide citations to the particular motion that was denied. *See* TEX. R. APP. P. 38.1(i). In the absence of appropriate citations, Randy has failed to adequately develop her arguments regarding this issue. *See id.* Because it is inadequately briefed, this issue is waived. Accordingly, we overrule Randy's sixth issue.

---

[4] A motion to withdraw by Randy's original counsel does not appear in the record. However, new counsel filed an appearance on November 14, 2007.

## V. Conclusion

Having overruled all of Randy's issues, we affirm the trial court's judgment.

                                     _____

ROGELIO VALDEZ,
Chief Justice

Delivered and filed
the 10th day of December, 2009.