

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00252-CV

_____

GREGORY WAYNE COON, Appellant

V.

VICTORIA JACOBS THOMAS, Appellee

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-694810-21

Before Sudderth, C.J.; Birdwell and Wallach, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

## I. Introduction

This dispute between Appellant Gregory Wayne Coon and Appellee Victoria Jacobs Thomas arises from the division of Thomas's retirement benefits in their 1996 divorce. In 2021, the trial court entered a judgment nunc pro tunc on that division. *See Coon v. Coon* (*Coon I*), No. 02-21-00381-CV, 2022 WL 7232163, at \*1 (Tex. App.—Fort Worth Oct. 13, 2022, no pet.) (mem. op.); *Coon v. Coon* (*Coon II*), No. 02-23-00210-CV, 2024 WL 3896084, at \*1 (Tex. App.—Fort Worth Aug. 22, 2024, no pet.) (mem. op.). The crux of this appeal (and its predecessors) is whether the judgment nunc pro tunc repaired clerical errors or impermissibly attempted to correct judicial errors after plenary power had expired.

In the instant appeal,[1] Coon complains in his first two issues that the trial court erred by making substantive rather than clerical changes to the 1996 judgment; in his third issue, he contends that the trial court erred by refusing to enforce the original 1996 decree; and in his final issue, he argues that the trial court erred by awarding attorney's fees to Thomas. Because the record reflects that the changes were clerical, we overrule Coon's first three issues. And because the trial court had at least one statutory basis upon which to award attorney's fees to Thomas, we also overrule his fourth issue and affirm the trial court's judgment.

---

[1]Coon raised the same issues in his earlier appeals, but we did not reach them for procedural reasons.

## II. Background

In the parties' April 17, 1996 final decree of divorce, the trial court awarded to Coon 40% of Thomas's retirement benefits "existing by reason of [her] past, present, or future employment." However, after a remand by this court for clarification under *Baker v. Bizzle*, 687 S.W.3d 285, 293 (Tex. 2024),[2] the parties agreed and the trial court ordered that before the decree's signing, the rendition had occurred in a letter ruling on February 15, 1996.

The February 15, 1996 letter ruling granted the parties' divorce.[3] The trial court observed in the letter ruling that the case had been contested and that the parties had submitted their issues to the trial court to decide. The trial court awarded to Thomas "60% of her retirement benefits with the FDIC or elsewhere" and awarded to Coon "40% of such retirement benefits by Qualified Domestic Relations Order [(QDRO)]."[4] The letter ruling did not contain the "past, present, or future

---

[2]In *Baker*, the supreme court clarified the requirements for a letter ruling to be considered a rendition. 687 S.W.3d at 292–93. Citing *Baker*, we remanded this case to the trial court in *Coon II* because the record before us did not show whether the February 15, 1996 letter ruling met *Baker*'s requirements. 2024 WL 3896084, at *1 & n.3.

[3]Among other things, the letter ruling also established the parties' possession of the children, ordered Coon to pay monthly child support, and ordered the sale of the parties' residence.

[4]A QDRO is a "species of post-divorce enforcement" order that permits payment to an alternate payee of a pension, retirement plan, or other employee benefits. *Pelloat v. McKay*, No. 13-15-00456-CV, 2017 WL 2375762, at *3 (Tex. App.—Corpus Christi–Edinburg June 1, 2017, no pet.) (mem. op.) (stating that a QDRO is a

3

employment" language included in the decree two months later. The trial court's August 16, 1996 QDROs dividing Thomas's FDIC 401k Savings Plan and her Thrift Savings Plan stated that the date of divorce was February 15, 1996; the QDROs awarded to Coon 40% of Thomas's vested plans as of that date. Neither party appealed either the decree or the QDROs.

In 2021, Coon filed a petition for enforcement of the property division based on the decree's language. *See Coon I*, 2022 WL 7232163, at *1. Both parties moved for summary judgment, but Thomas also filed a motion for judgment nunc pro tunc or alternative request for clarification, contending that the decree contained a clerical error in its reference to "future employment" when the rendition did not contain that language. *See id.* at *2 (summarizing the parties' motions).

The trial court entered a judgment nunc pro tunc, deleting the words "past, present, or future employment," and replacing them with "employment as of February 15, 1996." *See id.* at *2–3. The trial court also added Thomas's FERS pension to the list of divisible plans. As set out below, illustrated by strike-out of the trial

---

final appealable order); *see Woodward v. Woodward*, No. 14-18-00039-CV, 2019 WL 3943020, at *2 n.1 (Tex. App.—Houston [14th Dist.] Aug. 20, 2019, no pet.) (mem. op.) (citing Tex. Fam. Code Ann. § 9.101). A pension plan that receives a valid QDRO must pay the plan benefits to the designated alternate payee. *Dalton v. Dalton*, 551 S.W.3d 126, 137–38 (Tex. 2018). Concurrent with its power to clarify and to enforce a decree's property division, a trial court also has continuing, exclusive jurisdiction to render an enforceable QDRO permitting payment of a pension, retirement plan, or other employee benefits divisible under the law of this state or of the United States to an alternate payee. *Pelloat*, 2017 WL 2375762, at *3.

court's deletions and italicization of the trial court's additions, the trial court thus modified the 1996 divorce decree's provisions:

> [Thomas] is awarded the following as [her] sole and separate property, and . . . [Coon] is divested of all right, title, interest, and claim in and to such property:
>
> (d) Sixty percent of any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of [Thomas's] ~~past, present, or future~~ employment *as of February 15, 1996*, including specifically the following retirement benefits with FDIC:
> > (1)  Thrift Savings Plan; ~~and~~
> > (2)  FDIC Savings Plan*; and*
> > *(3)  FERS Pension*[.]
>
> . . . .
>
> [Coon] is awarded the following as [his] sole and separate property, and [Thomas] is hereby divested of all right, title, interest, and claim in and to such property:
>
> (c) Forty percent of any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights~~s~~ related to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of [Thomas's] ~~past, present, or future~~ employment *as of February 15, 1996*, including specifically [her] following retirement benefits with FDIC:
> > (1)  Thrift Savings Plan; ~~and~~
> > (2)  FDIC Savings Plan; *and*
> > *(3)  FERS Pension*

as more fully set forth in a Qualified Domestic Relations Order. *The FERS Pension shall be divided pursuant to a Court Order Acceptable for Processing . . . .*

The trial court also awarded to Thomas $15,392.50 in attorney's fees. *See id.* at \*3.

### III. Discussion

Because part of Coon's property-division argument relies upon his characterization of Thomas's "conceding that she [did] not meet the burden of proof necessary to prove [at the 1996 trial] which part of the retirement is her separate property," we will briefly review marital property division before reaching his specific issues.

### A. Marital property

Regarding future property, the Texas constitution provides that *spouses* may partition between themselves property "then existing *or to be acquired*" but also that "laws shall be passed more clearly defining the rights of the spouses, in relation to separate and community property." Tex. Const. art. XVI, § 15 (emphasis added); *see* Tex. Fam. Code Ann. § 2.501 (stating that "[e]ach spouse" has the duty to support the other). We turn to the Family Code, which defines what property may be divided upon the marriage's dissolution. *See* Tex. Fam. Code Ann. §§ 3.001–.003; *see also id.* § 1.003 (defining "[s]uit for dissolution of a marriage" as, among other things, a "suit for divorce").

A marriage's existence generally determines whether property is community: "property, other than separate property, acquired by either spouse *during* marriage." *Id.*

§ 3.002 (emphasis added); *see also id.* § 3.003 (explaining that there is a presumption that property is community if possessed by either spouse "during or on dissolution" of marriage). The trial court granted the parties' divorce here on February 15, 1996, in its letter ruling. Accordingly, under the Family Code, any property acquired by the parties after that date would not be community property—and thus should not have been divided—because Coon and Thomas were no longer spouses. *See id.* §§ 3.002–.003. *But see Shanks v. Treadway*, 110 S.W.3d 444, 449 (Tex. 2003) (explaining, as to an unappealed decree, that the district court's erroneous application of law by awarding to ex-wife some of ex-husband's separate property interest in his retirement benefits "does not alter the decree's plain language");[5] *see also Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011) ("A judgment finalizing a divorce and dividing marital property

---

[5]In *Shanks*, the decree awarded to the ex-wife a 25% interest in the ex-husband's retirement benefits without limiting her interest post-divorce, and neither party appealed. 110 S.W.3d at 445 (stating that ex-wife was awarded 25% "of the total sum or sums paid or to be paid to [ex-husband] from such pension or retirement plan" and that her interest was in "any and all sums received or paid to [ex-husband] from such pension plan . . . if, as and when paid . . . to [him]"). Years later, the ex-husband sought a QDRO calculating the value of her interest as of the date of divorce and she countered by seeking a QDRO valuing her 25% share of his total benefits. *Id.* The trial court entered the QDRO sought by the ex-husband, and our sister court reversed the judgment, concluding that the QDRO impermissibly altered the original decree's substantive division. *Id.* at 446. The supreme court agreed with this interpretation because the decree was unambiguous, and it affirmed the intermediate court's judgment. *Id.* at 446–48 ("Whether intentional or not, the court that entered the decree failed to limit the community interest . . . and instead clearly gave [ex-wife] a twenty-five percent interest in the *total* amount . . . to be paid to [ex-husband] under the plan."). The issue here—divergence between rendition and decree and resolution by nunc pro tunc—did not appear in *Shanks*.

7

bars relitigation of the property division, even if the decree incorrectly characterizes or divides the property.").[6]

Here, the decree's original language regarding Thomas's "future" earnings divested her of a share of her separate property based on post-divorce earnings. The question before us is whether the trial court could repair the decree by using a judgment nunc pro tunc based on the rendition letter, which did not contain the problematic language that appeared in the decree but which also did not expressly set out the date of rendition as a limit.

## B. The nunc pro tunc issues

Coon challenges the judgment nunc pro tunc in his first two issues and the trial court's failure to enforce the decree in his third issue. We begin by reviewing the law applicable to judgments nunc pro tunc and related case law before applying that law to the facts and arguments before us.

### 1. Nunc pro tunc

Clerical mistakes in the record of any judgment may be corrected by the judge in open court in a judgment nunc pro tunc "according to the truth or justice of the

---

[6]In *Pearson*, 25 years after the parties' divorce was entered, the ex-husband sought to reclassify an asset—mineral interests inherited from his parents—as his separate property through a motion to clarify the decree and a separate declaratory-judgment action. 332 S.W.3d at 362. The supreme court held that because the ex-husband had failed to appear at the divorce trial, he had failed to rebut the community-property presumption applied to that asset, and the original property division was not subject to his collateral attack. *Id.* at 363–64 (holding that the trial court lacked jurisdiction to alter the original divorce decree).

case . . . and thereafter the execution shall conform to the judgment as amended." Tex. R. Civ. P. 316. A judgment nunc pro tunc under Rule 316 may clarify an original judgment or correct a clerical error, but it may not substantively alter an original judgment to correct a judicial error. *U.S. Cap. Invs., LLC v. Shahbazi*, No. 02-17-00199-CV, 2018 WL 772761, at *4 (Tex. App.—Fort Worth Feb. 8, 2018, pet. denied) (mem. op.).

We have previously reviewed the distinction between clerical and judicial errors in another divorce-related dispute, stating,

> "A clerical error is one that results from an inaccurate recording of the court's decision" such that "the signed judgment inaccurately reflects the true decision of the court." *Andrews v. Koch*, 702 S.W.2d 584, 585–86 (Tex. 1986); *In re S.D.*, No. 02-10-00221-CV, 2011 WL 3847440, at *3 (Tex. App.—Fort Worth Aug. 31, 2011, no pet.) (mem. op.); *see Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 167 (Tex. 2013). A judicial error, in contrast, "stems from a legal or factual mistake that requires judicial reasoning to correct." *In re J.S.*, No. 02-19-00231-CV, 2019 WL 5655254, at *3 (Tex. App.—Fort Worth Oct. 31, 2019, pet. denied) (mem. op.); *see Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986) (clarifying that "a clerical error [is one] made in *entering* final judgment" while "a judicial error [is one] made in *rendering* a final judgment").

*Keating v. Keating*, No. 02-20-00271-CV, 2022 WL 187985, at *7 (Tex. App.—Fort Worth Jan. 20, 2022, no pet.) (mem. op.). That is, a clerical error is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered by the court and that does not arise from judicial reasoning or determination. *Willow Vista Ests. Homeowners Ass'n, Inc. v. Haight*, No. 02-12-00432-CV, 2013 WL 4506821, at *1 (Tex. App.—Fort Worth Aug. 22, 2013, no pet.) (mem. op.);

*see Andrews*, 702 S.W.2d at 586 ("When a prior judicial determination is evidenced, but the signed judgment inaccurately reflects the true decision of the court, the error is clerical and may be corrected.").

An attempted nunc pro tunc judgment entered after the trial court loses plenary power is void if it corrects judicial rather than clerical errors, but even a significant alteration to the original judgment may be accomplished through a judgment nunc pro tunc so long as it merely corrects a clerical error. *Tex. Dep't of Transp.*, 397 S.W.3d at 167.

When deciding whether a correction is of a judicial or a clerical error, we look at the judgment actually rendered, not the judgment that should or might have been rendered. *Escobar*, 711 S.W.2d at 231. A court cannot alter a written judgment that precisely reflects an *incorrect* rendition.[7] *Id.* at 232. Whether an error in a judgment is judicial or clerical is a question of law. *Id.* But the pronouncement's terms are questions of fact. *Id.* The judicial or clerical question becomes a question of law only after the trial court factually determines whether it previously rendered judgment and the judgment's contents. *Id.* To render a judgment nunc pro tunc, there must be some

---

[7]Reducing a decision to final judgment has three phases: (1) rendition; (2) signing; and (3) entry. *Baker*, 687 S.W.3d at 291. Rendition and signing are judicial acts that can, but need not, occur at the same time. *Id.* Entry, on the other hand, is a clerical act undertaken by the clerk of the court. *Id.* at 291–92. A judgment's "rendition" is the judicial act by which the court settles and declares the decision of the law upon the matters at issue. *Id.* at 292. Rendition requires a present act, either by spoken word or signed memorandum, that decides the issues on which the ruling is made. *Id.* An error in rendition is always judicial error, which may not be corrected by a judgment nunc pro tunc. *In re Marriage of Martz*, No. 09-21-00048-CV, 2022 WL 2251731, at *4 (Tex. App.—Beaumont June 23, 2022, pet. denied) (mem. op.).

evidence that the judgment the trial court actually rendered is not correctly represented in the judgment signed and entered of record. *Martz*, 2022 WL 2251731, at *4.

Additionally, trial courts have no authority to enter a QDRO altering the substantive property-division terms. *See Dalton*, 551 S.W.3d at 140.[8] The court can enter a "clarifying order" to enforce compliance with an insufficiently specific division by more precisely specifying the manner of carrying out a previously ordered property division, but it may not amend, modify, alter, or change the property division. *Id.* If a judgment is ambiguous—that is, subject to more than one reasonable interpretation— courts should adopt the construction that correctly applies the law. *Shanks*, 110 S.W.3d at 447.

### 2. The parties' arguments

In his first two issues, Coon argues that the deletion of the "past, present, or future employment" language and the addition of the rendition date were errors outside of the trial court's plenary power when the rendition contained no limitation as to the time during which the divided retirement benefits were to be accrued and no

---

[8]In *Dalton*, the trial court entered multiple QDROs, each time allocating additional interests to the ex-wife in the ex-husband's retirement accounts in response to his failure to pay support obligations entered in an out-of-state agreement that had been incorporated into the Texas divorce decree. 551 S.W.3d at 130–33. The supreme court reversed because "no Texas procedure or remedy allowed the court to assign [ex-wife] more interests in [ex-husband's] retirement accounts than were assigned in the final divorce decree." *Id.* at 137. The 1996 QDROs here do not purport to make such a division.

limitation of the divided benefits to the "community portion" of Thomas's retirement benefits accrued before the date of divorce. He complains that adding the date limitation that was not in the original rendition "changes completely the breadth of the award stated in the rendition by severely narrowing it" and that the trial court erred by refusing to enforce the decree's unambiguous language.

Thomas responds that the decree did not match the rendition, which did not explicitly award to Coon any of her federal retirement benefits accruing after the date of divorce. She argues that the trial court's contemporaneous orders—the QDROs—divided some of her federal retirement benefits as of the date of rendition and clarified the trial court's intent to not award to Coon any of her benefits accruing after divorce.

### 3. Application

The three-page February 15, 1996 rendition recited that the parties were divorced as of that date, that the case was contested, and that Thomas was "awarded 60% of her retirement benefits *with the FDIC or elsewhere* and [Coon was] awarded 40% *of such retirement benefits by Qualified Domestic Relations Order.*" [Emphases added.] When the decree failed to match this rendition, a clerical error occurred. That is, as reflected in this record, the decree added language beyond what the rendition provided.

We note that some of the decree's additional language, which the trial court did not strike in the judgment nunc pro tunc, could be reasonably construed as mere clarification of the "retirement benefits . . . elsewhere" referenced in the rendition:

12

> any and all sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, pension plan, employee stock option plan, employee savings plan, accrued unpaid bonuses, or other benefit program existing by reason of [Thomas's] . . . employment[.]

These are all types of benefits provided by reason of employment for retirement purposes, and the decree specifically included the Thrift Savings Plan and the FDIC Savings Plan—the "retirement benefits with the FDIC or elsewhere" that were addressed in the subsequently entered QDROs. Further, the allocation to Coon in the decree added, "as more fully set forth in a [QDRO]," paralleling the rendition language.

The August 16, 1996 QDROs, which were specifically identified in both the rendition and the decree, awarded to Coon "40% of the vested FDIC 401K Savings Plan account of [Thomas], Participant *as of February 15, 1996*," and "40% of the vested Thrift Savings Plan account of [Thomas], Participant *as of February 15, 1996*." [Emphases added.]

The rendition did not identify *any* award based on Thomas's "future employment," and the QDROs entered not long after the rendition and decree clarified the distribution "as of February 15, 1996," i.e., the date of rendition. Accordingly, the trial court could have reasonably found that the temporal reference to Thomas's future employment was a clerical error subject to correction through the

13

judgment nunc pro tunc to reflect Thomas's employment as of the February 15, 1996 rendition.

To support his position, Coon refers us to the following cases: *Stirling v. Stirling*, No. 02-10-00329-CV, 2011 WL 3211242, at *1 (Tex. App.—Fort Worth July 28, 2011, no pet.) (mem. op.); *Reiss v. Reiss*, 118 S.W.3d 439, 440–42 (Tex. 2003); *Wagner v. Davis*, No. 02-19-00249-CV, 2020 WL 241381, at *3 (Tex. App.—Fort Worth Jan. 16, 2020, no pet.) (mem. op.); and *In re Marriage of Russell*, 556 S.W.3d 451, 459–60 (Tex. App.—Houston [14th Dist.] 2018, no pet.). These cases were argued at the parties' 2021 hearing, and Thomas distinguishes each, as she did at that hearing, pointing out that the first three were not nunc pro tunc cases and the last did not involve a separate rendition. We will address each in turn.

In *Stirling*, the decree used the same "past, present, or future employment" language as the instant decree to divide two of the ex-husband's retirement plans. 2011 WL 3211242, at *1. The ex-wife subsequently discovered another of his retirement plans and filed a petition for post-divorce division of community property but not—as here—a motion for judgment nunc pro tunc. *Id.* Although the trial court granted her petition to divide the additional retirement benefits, we reversed, concluding that the parties' agreed divorce decree had unambiguously divided the entire community estate. *Id.* at *2. In contrast, in the instant case, the parties' decree

14

was not agreed,[9] and it diverged from the rendition. As argued by Thomas, *Stirling* is distinguishable.

In *Reiss*, the trial court awarded to the ex-wife 50% of the ex-husband's retirement benefits in a decree that specified that "if and when [ex-husband] retires and/or receives a pension from Goodyear[], or for any other reason becomes entitled to receive retirement or pension benefits from Goodyear[], then, and in such event, [ex-wife] *shall receive fifty percent (50%) of such retirement or pension benefit to which [ex-husband] is entitled to receive from Goodyear*[]." 118 S.W.3d at 440 (emphasis added). As here, neither party appealed. *Id.* at 440, 442.

Years later, when the ex-husband retired, the ex-wife moved for a QDRO to enforce the division, including any sums accrued after the divorce, and the trial court granted it. *Id.* at 440–41. The supreme court held that in entering the original decree, the trial court "in effect mistakenly classif[ied] all of the benefits [the ex-husband] was entitled to receive under the plan as community property and divid[ed] them as such." *Id.* at 441. But because it was unambiguous, although the decree's effect was to divest

---

[9]Although Coon contends that paragraph 3 of the affidavit he filed in support of his summary-judgment motion supports his appellate position, this portion of his affidavit is not "clear, positive and direct . . . and free from contradictions and inconsistencies." *See* Tex. R. Civ. P. 166a(c). That is, in paragraph 3, Coon asserted both that they "had a *fully contested* trial[.] . . . The Court's ruling was that [Thomas] would take 60% of all of *accumulated* our [sic] retirement funds, and [Coon] would receive only 40%," but also, "[Thomas] and her attorney . . . *agreed* to have the Court just split the retirement 60/40." [Emphases added.] We infer that the trial court took these inconsistencies into account when it denied Coon's summary-judgment motion. *See Coon I*, 2022 WL 7232163, at *2.

15

him of his separate property, "that does not alter the decree's plain language." *Id.* at 441–42. The decree's language "unequivocally award[ed]" to the ex-wife half of his "total retirement benefits under the plan, regardless of when they accrued." *Id.* at 442. The QDRO was consistent with the unappealed decree's unambiguous property division. *Id.* Here, in contrast, it is the decree that does not match the rendition or the QDROs. Thus, *Reiss* is also distinguishable from the instant case.

In *Wagner*, the trial court granted an order on the ex-wife's motion to clarify the parties' agreed divorce decree in which the ex-husband was awarded 50% of the proceeds from the sale of the marital residence, and the ex-wife was ordered to pay him 50% of the equity as of the sale date. 2020 WL 241381, at *1. The trial court entered an order clarifying that the ex-husband's share was 50% of the community value on the date of the divorce. *Id.* at *2. We reversed because the agreed decree expressly set out when and how to value his interest—at the time of sale—and thus the trial court had erred by finding ambiguity and rewriting the parties' contract. *Id.* at *4. Here, in contrast, there was no agreement between the parties—it was a contested divorce—and unlike the instant case, *Wagner* did not involve a divergence between the terms of the rendition and decree.

Finally, in *Russell*, the parties signed a mediated settlement agreement (MSA) that allocated $201,000 of the ex-husband's 401k to the ex-wife as of September 28, 2015, but this item was not discussed at the prove-up hearing, and three days later, the trial court signed and entered the decree, which did not include that award. 556

16

S.W.3d at 453. Several months later, after plenary power had expired, the ex-wife sought a judgment nunc pro tunc, and the trial court granted it. *Id.* at 453–54.

Our sister court concluded that the judgment nunc pro tunc was void because there was no evidence that the trial court had rendered a judgment different from the final divorce decree—nothing in the decree, to which the parties had agreed in form and substance, stated that it was approving or incorporating the MSA, and the decree explicitly stated that it would control to the extent any conflict existed between it and the MSA. *Id.* at 458–61. The judgment nunc pro tunc changed the parties' substantive rights under the decree and corrected judicial, not clerical, errors. *Id.* at 460–61. In contrast, here, the rendition (judicial action) occurred before the decree's entry (clerical action).

Nothing in the cases Coon relies upon contradicts our analysis above. Accordingly, because the trial court corrected a clerical error, we overrule Coon's first two issues. And because the correction deleted the inappropriate future language, which is what Coon sought to enforce, the trial court did not err by denying his motion for enforcement. We overrule his third issue.

## C. Attorney's fees

In his final issue, Coon argues that the trial court erred by awarding to Thomas her attorney's fees incurred in making her request for the judgment nunc pro tunc, asserting that there is no statutory or contractual authorization to support the award. Thomas responds that the trial court did not err because the judgment nunc pro tunc

17

proceeding was to correct an underlying divorce decree, *see* Tex. Fam. Code Ann. § 6.708, and that attorney's fees are allowed on a motion for enforcement, which is what Coon filed, or on a motion for clarification, which Thomas incorporated into her motion, because both actions are included in the part of the Family Code addressing post-decree enforcement, *see id.* §§ 9.006 (enforcement), 9.008 (clarification), 9.014 ("The [trial] court may award reasonable and necessary attorney's fees . . . in a proceeding under this subchapter.").[10]

A trial court may award reasonable attorney's fees in appropriate family-law proceedings, including a proceeding to clarify and enforce a property division, and we review such an award for an abuse of discretion. *Garcia v. Ranft-Garcia*, No. 04-22-00415-CV, 2024 WL 1184458, at *4 (Tex. App.—San Antonio Mar. 20, 2024, no pet.) (mem. op.); *see E.R. v. B.R.*, No. 02-16-00367-CV, 2017 WL 4172065, at *3 (Tex. App.—Fort Worth Sept. 21, 2017, no pet.) (per curiam) (mem. op.) (citing Family Code Section 6.708(c) as one of several potential statutory bases to support an attorney's-fee award); *see also Fowler v. Fowler*, No. 2-07-274-CV, 2008 WL 2330987, at *2 (Tex. App.—Fort Worth June 5, 2008, no pet.) (mem. op.) (reciting abuse-of-discretion standard of review for rulings on motions for enforcement, for clarification, and for payment of attorney's fees).

To determine whether a trial court has abused its discretion, we must decide whether it acted without reference to any guiding rules or principles, i.e., whether its

_____

[10]Coon does not challenge the award's reasonableness or necessity.

act was arbitrary or unreasonable. *Fowler*, 2008 WL 2339087, at *2 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). When, as here, the trial court does not set out the statutory basis for the attorney's-fee award in its order, it acts within its discretion if there is a valid legal basis for its actions. *Garcia*, 2024 WL 1184458, at *4–5 ("[W]e cannot hold [that] the trial court abused its discretion by awarding fees to [ex-wife] for prosecuting her enforcement action under Chapter 9 of the Texas Family Code.").

Regardless of the titles of the parties' various motions, *see Brumley v. McDuff*, 616 S.W.3d 826, 833 (Tex. 2021) (requiring us to examine substance rather than form), their dispute centered on clarifying and enforcing the property division arising from their divorce. Because of this, as pointed out by Thomas, the trial court had at least one statutory basis upon which to award attorney's fees to her. *See Garcia*, 2024 WL 1184458, at *4; *see also* Tex. Fam. Code Ann. §§ 9.006, .008, .014. Accordingly, we cannot say that the trial court abused its discretion by awarding attorney's fees to Thomas, and we overrule Coon's final issue.

## IV. Conclusion

Having overruled all of Coon's issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: January 8, 2026

19